**UNITED STATES v. CENTRAL SUPPLY ASS'N et al.**

No. 16750.

District Court, N. D. Ohio, E. D.

Aug. 22, 1940.

Edward P. Hodges and Kenneth L. Kimble, Sp. Assts. to Atty. Gen., Smith R. Brittingham, Jr., Sp. Atty., of Washington, D. C., Thurman Arnold, Asst. Atty. Gen., and Emerich B. Freed, U. S. Atty., of Cleveland, Ohio.

Sullivan & Cromwell, of New York City, and Jones, Day, Cockley & Reavis, of Cleveland, Ohio (Patrick J. Mulligan, Luther Day, and Thomas O. Nevison, all of Cleveland, Ohio, of counsel), for American Radiator & Standard Sanitary Co. and others.

McKeehan, Merrick, Arter & Stewart, and Fred J. Perkins, all of Cleveland, Ohio, and Lucius P. Chase, of Kohler, Wis. (Ashley M. Van Duzer, of Cleveland, Ohio, of counsel), for Kohler Co., Herbert V. Kohler, and O. A. Kroos.

William F. Marsteller, of Akron, Ohio, and I. R. Morris, of Cleveland, Ohio, for John A. Ogren.

Collen & Kessler, of Chicago, Ill., William S. Collen, of Chicago, Ill., and Benesch, Marsteller, Friedlander & Morris, of Cleveland, Ohio, for Manufacturers Clearing House, Inc.

242

WILKIN, District Judge.

This case came on for hearing upon the motions for an order releasing witnesses from oath of secrecy and for an order disclosing names of witnesses.[1] Witnesses examined before the grand jury which returned the indictment were required to take the following oath: "You do solemnly swear that in the testimony you are about to give you will speak the truth, the whole truth and nothing but the truth, and that further you will not divulge anything that transpires in this grand jury room until called upon by a court having competent jurisdiction thereof, so help you God!"

The motions seek (1) a release of all witnesses from the obligation to keep secret what occurred in the grand jury room; and (2) disclosure of the names of all witnesses. The defendants maintain that such orders are necessary to enable them to prepare their defense and that a denial of such orders would deprive them of their constitutional guaranties set forth in the Fifth and Sixth Amendments to the Constitution of the United States. Counsel for the United States say such orders are unwarranted in law. The motions were submitted upon briefs.

As to the first object of the motions (1) there is a dearth of reported cases. The scarcity of precedents indicates the unusual nature of the request. Whether the

[1] The following defendants moved for an order releasing witnesses from oath of secrecy:

Kohler Company, Herbert V. Kohler, O. A. Kroos, American Radiator & Standard Sanitary Corporation, John J. Hall, Frank S. Kaulbach, Henry M. Reed, John A. Ogren, Manufacturers Clearing House of Illinois, Inc., George Masterton, William Butler, Howard Enold, Wilbur Gregory, C. J. Maher, James McNern, Sam Poole, William E. Quirk, John Roddy, D. M. Stribling, Edwin Turnock, United Association of Journeymen Plumbers and Steam Fitters of the United States and Canada, United Association of Journeymen Plumbers and Steam Fitters of the United States and Canada, Local Union No. 94, United Association of Journeymen Plumbers and Steam Fitters of the United States and Canada, Local Union No. 130, United Association of Journeymen Plumbers and Steam Fitters of the United States and Canada, Local Union No. 55, Plumbing and Heating Warehousemen's Auxiliary to the Journeymen Plumbers Union, Local Union No. 55, United Association of Journeymen Plumbers and Steam Fitters of the United States and Canada, Local Union No. 98, United Association of Journeymen Plumbers and Steam Fitters of the United States and Canada, Local Union No. 640, United Association of Journeymen Plumbers and Steam Fitters of the United States and Canada, Local Union No. 519, United Association of Journeymen Plumbers and Steam Fitters of the United States and Canada, Local Union No. 118, United Association of Journeymen Plumbers and Steam Fitters of the United States and Canada, Local Union No. 172, National Association of Master Plumbers of the United States, Inc., Canton Master Plumbers Association, Cleveland Plumbing Contractors Association, Dade County Master Plumbers Association, Detroit Association of Master Plumbers, Greensboro Plumbing & Heating Contractors, Inc., The Master Plumbers Association of South Bend, Racine Master Plumbers Association, Henry S. Blank, U. I. Bott, H. W. Eckhardt, Ernst L. Flentje, L. J. Kruse, Bernard E. McGrath, Arthur S. Pettit, H. Merwin Porter, George H. Werner, The Central Supply Association, Southern Wholesalers Association, Plumbing & Heating Wholesalers of New England, Inc., American Institute of Wholesale Plumbing and Heating Supply Associations, Braman, Dow & Company, Noland Company, Inc., Horne-Wilson, Inc., Hajoca Corporation, James B. Clow and Sons, Galloup Pipe & Supply Company, The Hardware & Supply Company, Inland Supply Company, Murray W. Sales & Company, Nelson Company, W. E. McCollum, E. L. Pugh, Harry G. Starr, M. W. Dennison, L. U. Noland, Charles B. Wilson, W. A. Brecht, W. J. Spillane, J. A. Galloup, Fred H. Steffens, H. C. Yelton, D. G. McLeod, and H. O. Nelson.

Kohler Company, Herbert V. Kohler, and O. A. Kroos moved for an order releasing witnesses from oath of secrecy and for an order requiring the clerk of court, the marshal of the court, the United States Attorney, and the foreman of the grand jury to disclose the names and addresses of all witnesses.

John A. Ogren and Manufacturers Clearing House of Illinois, Inc., moved for an order releasing witnesses from oath of secrecy and for an order directing the United States District Attorney and the Special Assistants to the Attorney General of the United States to disclose names and addresses of all witnesses who testified before the grand jury.

infrequency of such requests is due to the fact that in many jurisdictions they are unnecessary, or that they are unwarranted by law, opposing counsel do not agree.

It seems to this court that the problems presented can best be considered in the light of the history and purpose of the grand jury. The function of the grand jury grew out of the responsibility of each community for the preservation of the peace. II Select Essays in Anglo-American Legal History, 444. When the English justiciars on circuit visited a community, they called for the presentation in court of such persons as were suspected of the crimes that had been committed. The accusation rested not on the assertion of a single prosecutor, nor on the indictment of any formal organization, but on the fama publica of the neighborhood. In the course of time, however, it was found unsatisfactory to leave the accusations to the general voice of the neighborhood. The responsibility had to be placed more definitely upon designated individuals. The following paragraph is enlightening; it is from Forsyth's History of Trial by Jury, the earliest work on the subject (p. 194): "It was a consequence of the peculiar system of society in England in early times, that system which rendered every man a surety for the conduct of his neighbor, and therefore responsible to a certain extent for the offenses committed by him, that each community had a direct interest in discovering and bringing to justice malefactors. Besides, who were so likely to know the character of a man as his neighbors? Who so likely to be guided aright in their suspicions as to the author of a crime committed amongst themselves? * * * Still, however, the inconvenience must have been felt of trusting to public rumors to indicate the criminal. It might be too vague and indefinite to warrant the apprehension of any one—and different persons might entertain and express different suspicions. Or again parties might be fearful or unwilling to make themselves conspicuous as accusers, especially after the introduction of trial by battle, which compelled them to support their charge by single combat. Accordingly we find that this led to legislative interference. The Constitutions of Clarendon (A.D. 1164) provided that where a party was suspected, whom no one dared openly to accuse, the sheriff, on the requisition of the bishop, should swear twelve lawful men of the neighborhood or vill, in the presence of the bishop, and these were 'to declare the truth thereof according to their conscience' ".

At page 215 Forsyth states: "We see that when the justices in eyre paid their periodical visits to the counties, they caused to be summoned before them twelve knights, or other good and lawful men, for each hundred, and charged them upon their oaths to inquire respecting crimes and offenses committed within their respective hundreds or wappentakes, so that they might be ready to present to the court the suspected persons at a future day fixed by the justices. It has been shewn that these jurors were the representatives of and substitutes for the fama patriae, or public rumor, by which in old times when a man was assailed he was said to be male creditus, and was thereupon arrested and put upon his trial."

For such jury service the officer was directed to select men who were "believed to be best informed of the truth of the matter, and how it happened". And soon, by statute, it was required that the accusation should be supported by at least twelve jurors. And, at page 207, Forsyth records: "Here it seems that the jury were acting rather as accusers than as triers, at all events we see that they did not give their verdict upon evidence taken in court, but upon the private knowledge or belief which each had beforehand of the commission of the offense in question". See also, Forsyth, pp. 108 and 242, as to action by juries upon facts within their own knowledge.

From these quotations, which are supported by our general knowledge of the early history of our institutions, we see that the grand jurors originally acted as witnesses as well as jurors. I Sel.Essays Anglo-Am.L.H., 129; I Green: Hist.Eng. People, p. 167. It has long been, and still is, permissible to base indictments solely on the knowledge or information of grand jurors.

We also know that from earliest times the veil of secrecy was cast over the deliberations of the grand jury and they were not called upon to disclose what occurred during their deliberations except in a judicial inquiry directed by the court. Forsyth says, (p. 218): "It was formerly deemed felony, if not high treason, for any of the grand jury to divulge the names of the persons whom they were about to present." This veil was extended to cover all that happened in the jury room,

in order that there might be a full and free disclosure. Otherwise, as Forsyth says, "parties might be fearful or unwilling to make themselves conspicuous as accusers". As early as 1600 the jurors were charged upon oath "the King's counsel, your fellows', and your own, you shall keep secret." And that oath has come down to our own time without much change. Since they acted in dual capacity, the secrecy covered their counsel both as jurors and as witnesses.

In historic perspective, the purpose of the grand jury was to bring to trial those who were suspected of violating the law, although its function of investigating or inquiring as to crime has since grown in importance. It seems, however, that persons accused have had little to say about the proceedings of the grand jury. At an early time in English history (Assize of Clarendon), in furtherance of the king's effort to wrest control of the courts from the church, he provided that suspects should be held by his justiciars to answer for crimes upon the "presentment" of a jury composed of men of the hundred and township. The bishops and barons a hundred years later adopted the provision as a shield. In Magna Charta it became a protection to free men against oppression by the king. It was carried into our own Constitution by the provision of the Fifth Amendment that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury", etc. The security to accused persons consists in the popular character of the grand jury, in the fact that they meet, receive, and sift the evidence independently, secretly, and in their own way, and are therefore not likely to be swayed or influenced by passions or improper motives. The guaranty is simply that one shall not be put upon trial unless a jury of his peers have found probable cause.

■ That is the only constitutional guaranty regarding the grand jury. After the presentment or indictment, other guaranties come into play. The accused has then a right to an open trial, to confront the witnesses, to have the assistance of counsel, and trial by jury. These provisions, however, do not affect the deliberations of the grand jury. United States v. Amazon Industrial Chemical Corp., D.C., 55 F.2d 254, 261. The arguments which counsel advance in support of the motions might just as well be advanced in support of a claim that the accused has the right to attend before the grand jury, be represented by counsel, and cross examine witnesses. But it is clear that the accused has no right to appear before the grand jury, either personally or by counsel. And although the district attorney may examine witnesses before the grand jury, even he has no right to be present during their deliberations if any juror objects. He is forbidden by law to be present during their vote on a bill. Trial by Jury, Moschzisker Sec. 110. United States v. Wells et al., D. C., 163 F. 313, syl. 5; United States v. Rintelen, D.C., 235 F. 787. Forbidden by statute in Ohio, General Code, Sec. 13436-7.

■ Persons accused have a right to insist that the grand jury which indicted them should have been duly impanelled and conducted according to law. Beyond that they have no rights so far as the grand jury is concerned. By ancient and abundant authority it seems that what takes place in the grand jury room may be investigated only by judicial inquiry, when the court deems it necessary in order to advance the cause of truth and justice (Trial by Jury, Moschzisker, Sec. 109), and then "only where by proper verified pleading a clear and positive showing is made of gross and prejudicial irregularity influencing the grand jury in returning an indictment". United States v. American Medical Ass'n, D.C., 1939, 26 F.Supp. 429, 431. As was stated by Thacher, J. in Sands v. Robison, 12 Smedes & M. 704, 710, 51 Am.Dec. 132: "Hence it will be seen that so much depends upon time and circumstances, that the competency of a grand juror to testify is peculiarly a matter of discretion with the court to discriminate as to it." VIII Wigmore on Evidence, 3rd ed., Sec. 2360, and authorities cited p. 720. Jurors "may be called in a proper case". Latham v. United States, 226 F. 420, 423, L.R.A.1916D, 1118. In most of the cases cited in support of the motions herein the release and disclosure were in a proceeding in court; it was not a general release for questioning outside the court. In the one instance where a general release was issued, in the cases of United States v. Standard Oil Co., (Indiana) et al., No. 11296, United States v. Standard Oil Co., (Indiana) et al., No. 11365, United States v. Socony-Vacuum Oil Co., Inc., et al., No. 11342, and United States v.

Socony-Vacuum Oil Co. et al., No. 11364, U. S. District Court, Western District of Wisconsin, May 12, 1937, cited by defendants, it was thought necessary because the witnesses were officers of the companies indicted, and the government assented. If that is a precedent, this court does not wish to extend it, nor to follow it.

The privilege of secrecy extends not only to jurors as such and as witnesses, as above pointed out, but it extends to those who appear exclusively as witnesses before the grand jury. This is true in principle and in practice. VIII Wigmore on Evidence, 3d Ed., § 2362, p. 724.

Counsel for defendants quote Housel & Walser, Defending and Prosecuting Federal Criminal Cases, to the effect that: "Witnesses before the grand jury may state to any one and every one what they testified to. The veil of secrecy is hung only upon the grand jurors." If by "what they testified to" is meant their statement to the grand jury during its deliberations, the statement is too broad. If, however, the words mean merely that the witnesses are free to relate the facts within their knowledge acquired beyond the grand jury room, then the statement is correct. It is conceded by all counsel that the oath of secrecy does not preclude the witnesses from informing defendants or others as to their knowledge of facts obtained beyond the confines of the jury room. In that field defendants are as free to conduct inquiry as is the grand jury. In fact the oath requires of the juror merely that he "will not divulge anything that transpires in this grand jury room". But, as to what occurred there, the veil of secrecy is hung not only over the grand jurors, but over all who were present.

It must be conceded that at the common law the grand jury witnesses, unlike jurors, were not at first under an obligation of secrecy. This is shown by the form of their oath, which omits any pledge of secrecy. Book of Oaths, 1688 Ed., 113-115. In modern times, however, it has been found necessary or at least advisable to extend the obligation to witnesses.[2] So many jurisdictions have adopted the practice that it is no doubt beyond question now. The authority to do so rests upon the inherent power of courts to make rules of general application for the efficiency of the grand jury. If the practice is a modification of the common law, that would not condemn it, for the common law has been recognized as a growing institution in this country. Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369; United States v. Amazon Industrial Chemical Corp., D.C., 55 F.2d 254, 259. But from what has been said as to the history of grand juries, it is apparent that such practice is not so much a modification as a restoration of the condition which obtained when the jurors were also the only witnesses.

If need be, however, the practice can be further supported on principle. Most of the reasons given in support of secrecy for grand jurors apply equally for witnesses. The reasons assigned by most courts and legal authorities are: (1) To prevent the escape of whose those indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations by protecting them from the importunity and sinister influence of persons suspected and their friends; (3) to prevent subornation of perjury or tampering with witnesses who appear before the grand jury and later appear at the trial; (4) to protect witnesses, so as to encourage them to appear, make complaints, and testify fully; (5) to protect the good names of innocent persons investigated but not indicted. United States v. Amazon Indus. Chem. Corp., supra, 55 F.2d 261; VIII Wigmore on Evidence, 3rd ed., Sec. 2360, p. 722, and Sec. 2362. The very statement of the reasons shows their applicability to witnesses as well as to jurors. The structure of modern society, with its

---

[2] United States District Courts requiring oath of secrecy are: Alabama, Middle and Northern Districts; Arizona, District of; Arkansas, Eastern District; California, Northern and Southern Districts; Colorado, District of; Florida, Northern and Southern Districts; Idaho, District of; Illinois, Northern District; Indiana, Southern District; Kansas, District of; Louisiana, Eastern and Western Districts; Michigan, Eastern and Western Districts; Minnesota, District of; Mississippi, Northern and Southern Districts; Missouri, Eastern and Western Districts; Nebraska, District of; Nevada, District of; Ohio, Northern District; Oklahoma, Eastern, Northern, and Western Districts; Oregon, District of; Texas, Eastern, Northern, Southern, and Western Districts; Utah, District of; Washington, Western District; Wisconsin, Eastern and Western Districts.

pressure groups and organized crime, requires that the processes for free disclosure of criminals must be carefully guarded. Congested areas of our population have been victimized by those forms of organized criminals popularly referred to as gangsters and racketeers. The law enforcement agencies of government must necessarily be strengthened and sustained to cope with such threats against law and order.

From the foregoing discussion we have seen that the prime purpose of the grand jury was to bring malefactors to the bar of justice. Its use as a protection against oppression was only secondary. We must not allow its essential purpose to be weakened by over-emphasizing the importance of its secondary purpose. It is quite necessary in these times that we guard zealously the guaranties of government according to due process of law, but it is also quite necessary that we keep those processes efficient. United States v. Garsson et al., D.C., 291 F. 646, 649(6). Tragic current events show that the first requirement in the defense of free government against the totalitarianism that assails it, is the imposition of such self-discipline as will subject all elements of society to the commonweal. It is not fear of pressure upon witnesses in this case that prompts this observance of the rule of secrecy. It is a hearty respect for that public policy which invites, permits, and protects absolute freedom and security of expression before the grand jury. What is said to that agency of the court is said in confidence.

■ Counsel for defendants assume in their briefs that the only reason for secrecy is to prevent notice to the accused before apprehension. They argue that after the return of the indictment and the arrest or appearance of the accused, all reasons for secrecy are removed. Reference to the reasons for secrecy given above will show that such argument applies only to the first and second. Escape of the accused and pressure against free action of the grand jury need not be feared after the return of the indictment and apprehension of accused. But when we consider the other reasons not only as to this case, but as to subsequent cases, the reason for maintaining secrecy even after indictment becomes apparent. United States v. American Medical Ass'n, D.C., 26 F.Supp. 429, 430(2).

Now as to the second object of the motions (2), the disclosure of the names of witnesses, while not orthodox common-law practice, yet it must be conceded that early practice accorded with the request. VI Wigmore, Sec. 1850. In the very nature of the grand jury processes there cannot be absolute secrecy as to the identity of witnesses. Such witnesses may be seen going to and from the grand jury room. Their names may appear in subpoenas issued by the court. And, in so far as their identity is revealed, it is available to defendants. Owing to these conditions and a less complex organization of society in earlier times the secrecy which covered deliberations of the grand jury did not extend to the names of witnesses. Forsyth, in his History of Trial by Jury (p. 221), referring to the practice in England prior to 1852, said that when the grand jury had been sworn and charged, they then retired "to examine the witnesses who support the accusation, indorsing on the back of each bill the names of all the witnesses whom they examine in that case". This practice was adopted in many states.[3] As a result of such practice, many state courts have held that there is no reason for maintaining secrecy as to the names of witnesses after the indictment is returned. The statement of Wigmore to this effect, referred to by counsel for defendants, is clearly based upon the practice of requiring the publication of names of witnesses with the indictment. VIII Wigmore, 3rd ed., Sec. 2363(c).

■ Regardless of the practice in England and the States, the United States courts have never adopted such practice and have almost uniformly refused requests for the names of witnesses appearing before the grand jury, even in states.

---

[3] It seems that some states merely adopted the practice of England, while other states passed statutes, mandatory or directory, with reference to the indorsement of names of witnesses on indictments. An examination of the digest reveals that the following states have or have had laws directing or requiring the names of witnesses on indictments: Arkansas, California, Illinois, Indiana, Iowa, Kentucky, Missouri, Montana, Nebraska, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Virginia, Washington, West Virginia.

where the custom of indorsing such names on indictments was in vogue. It is conceded by counsel for defendants that the federal courts are not bound by state practice in criminal procedure.

The practice in the United States courts was influenced by the enactment by Congress of two laws: (1) Title 18, Section 562, U.S.C., 18 U.S.C.A. § 562, provides that any person indicted of treason or other capital offense shall be supplied with a copy of the indictment, a list of the jurors, and all "witnesses to be produced on the trial for proving the indictment, stating the place of abode of each juror and witness". (2) Title 18, Section 562a, U.S.C., 18 U.S.C.A. § 562a, provides: "In each criminal case not provided for in section 562 of this title the clerk shall furnish each defendant, upon his request, a copy of any information filed or indictment returned against him", etc. The conclusion was drawn that the omission from this latter section of any mention of furnishing a defendant with a list of witnesses clearly indicated that he had no right to such list in cases other than treason or capital offenses. And it has been held by the Supreme Court and other federal courts that the list of witnesses required by Sec. 562 to be delivered to the defendant is not a list of the witnesses on whose testimony the indictment was founded, but merely a list of "witnesses to be produced on the trial". Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429.

In Balliet v. United States, 8 Cir., 1904, 129 F. 689, at page 692, the court said: "Except when a person is indicted for treason or some capital offense (vide section 1033, Rev.St.U.S. [18 U.S.C.A. § 562]), there is no provision found in the federal statutes requiring the accused in a criminal action to be furnished with a list of the witnesses who will be produced against him, or requiring the names of witnesses to be indorsed on the indictment; and the fact that a special provision is made for advising the accused of the names of witnesses who will be produced on trials for treason and other capital offenses warrants the inference that in prosecutions for other offenses against the laws of the United States it is unnecessary to advise the accused of the names of witnesses who will be sworn. The maxim, 'Expressio unius est exclusio alterius,' clearly applies."

In United States v. Aviles, D.C., 222 F. 474, at page 477, the court said:

"As to the motion to require the United States attorney to furnish to the defendants a list of the witnesses examined by the grand jury, I will say the Constitution provides (article 6 of amendments) that the defendant shall be confronted with the witnesses against him. This simply means that the defendant is entitled to attend the trial and to hear the witnesses testify. Section 1033 of the Revised Statutes provides that, in a charge of treason a list of the witnesses shall be furnished to the defendant at least three entire days before he is tried, and in all other capital offenses a list of the witnesses shall be furnished at least two days before the trial. It seems that by this statute Congress has taken a stand upon this very question, and this statute points out the policy of the government in all cases. The enactment of this statute concerning the subject would seem to exclude the idea that the prosecution was required to give a list of the witnesses in any other cases.

"California, Oregon, and some other states have statutes which require that the names of witnesses shall be indorsed upon the indictment. These statutes, however, are not controlling in the United States court. Jones v. United States [9 Cir.], 162 F. 417, 89 C.C.A. 303. The Supreme Court of the United States has decided that the defendant is not entitled to a list of the witnesses. United States v. Van Duzee, 140 U.S. 169, 172, 11 S.Ct. 758, 35 L.Ed. 399. There is an old case decided by a United States District Court in New York, holding that it is in the discretion of the court to require a list of witnesses to be given to the defendant. The reason upon which the court based the decision was that it was the practice in the state courts of New York to indorse witnesses upon the back of the indictment. No other reason is given, and it will be seen, from the authorities already cited, that the practice in the state courts does not control in this matter."

The Supreme Court in United States v. Van Duzee, 140 U.S. 169, 11 S.Ct. 758, 35 L.Ed. 399, cited in the opinion quoted above, held that the Clerk of a District Court could recover fees for copies of an indictment furnished to defendants in criminal cases. In its opinion the court said, 140 U.S. at pages 172, 173, 11 S.Ct. at page 760, 35 L.Ed. 399: "By section 1033, where a person is indicted for a capital offense, a copy of the indictment and list

of the jurors and witnesses shall be·delivered to him at least two entire days before his trial. There would appear to be· a negative pregnant here, and it has accordingly been held that in cases not capital the prisoner is not entitled to a copy of the indictment at government expense. * * * Nor is he entitled to a list of witnesses and jurors."

(As to copy of indictment the law was changed by statute, Title 18, Section 562a, U.S.C., 18 U.S.C.A. § 562a, cited above.)

In United States v. Pierce, D.C., 245 F. 888, the defendants demanded that they be furnished the names and addresses of all witnesses sworn by the government before the grand jury. The court denied this request, saying, 245 F. at pages 891, 892: "In some of the states, such a demand may be made and must be complied with. In other states, the names of such witnesses must be indorsed on the indictment; but this practice does not obtain in the United States courts. * * * Section 1033, R.S.U.S., provides that in cases of treason and capital offenses a list of jurors and witnesses must be furnished the defendant. [Citations.] There is no federal statutory provision going beyond this."

Jones et al. v. United States, 9 Cir., 1908, 162 F. 417, was an appeal from a conviction for conspiracy. The defendants moved to quash the indictment on the ground that the names of the witnesses summoned before the grand jury were not inserted at the foot of the indictment nor indorsed thereon. The case arose in Oregon, and an Oregon statute provided that the indictment must be set aside when the names of the witnesses summoned before the grand jury were not inserted at the foot of the indictment or indorsed thereon. Yet the court held that this was not the practice in the federal courts, and affirmed the conviction. To the same effect is Shelp v. United States, 9 Cir., 81 F. 694.

Mayer et al. v. United States, 6 Cir., 259 F. 216: On appeal from conviction for violating the liquor taxing act, the defendants complained that witnesses were allowed to testify for the government whose names were not indorsed upon the indictment. The court dealt with the point in a footnote, stating (259 F. at page 217): "Only in capital cases is this indorsement mandatory." And see Hendrikson et al. v. United States, 4 Cir., 1918, 249 F. 34.

In Wilson v. United States, 221 U.S. 361, at page 375, 31 S.Ct. 538, at page 542, 55 L.Ed. 771, Ann.Cas.1912D, 558, the court said: "* * * neither the constitutional provision nor the statute accords the right to be apprised of the names of the witnesses who appeared before the grand jury. Even in cases of treason and other capital offenses, under § 1033 of the Revised Statutes, the required list of witnesses is only those who are to be produced on the trial."

It seems that neither on principle nor by practice are the defendants entitled to the orders requested. The motions are therefore overruled.