Bruce KING et al., Plaintiffs,

v.

Edwin W. JONES, etc., et al., Defendants.

No. C70–974.

United States District Court,
N. D. Ohio, E. D.

Nov. 3, 1970.

Craig Spangenberg, Cleveland, Ohio, Michael Geltner, American Civil Liberties Union of Ohio, Columbus, Ohio, for plaintiffs.

Robert Balyeat, Special Counsel for Ohio Attorney General, Perry Dickinson, Thomas Martin, Michael Miller, Asst. Attys. Gen., for defendants.

## MEMORANDUM

BEN C. GREEN, District Judge:

This matter is before the Court on plaintiffs' motion for a preliminary injunction, oral hearings having been had thereon on October 29, 1970, a motion for temporary restraining order having previously been denied. There is also presented for decision a motion by defendants to dismiss the complaint.

The plaintiffs' complaint is filed in the form of an alleged class action. It purports to represent two classes of aggrieved individuals. It is alleged that the individual plaintiffs, and the class each is alleged to represent, have had protected constitutional rights infringed by certain injunctions issued by judges of the Common Pleas Court of Portage County, Ohio. The injunctions were issued in conjunction with the proceedings of a Special Grand Jury convened on September 14, 1970. The function of the said Grand Jury was to investigate the events which occurred at Kent State University in May, 1970, which culminated in the tragic deaths of four young people.

Plaintiff, Bruce King, who testified under subpoena before the Grand Jury, alleges that his claim is brought on his own behalf and on behalf of all other persons who were witnesses before the aforementioned Grand Jury. He alleges that an injunction issued September 5, 1970 which, in pertinent part, prohibits all witnesses before the Grand Jury from participating in interviews and from making statements for publication violates his rights under the First and Fourteenth Amendments to the United States Constitution. Although this injunction was issued ex parte by Judges Edwin W. Jones and Albert L. Caris of the Portage County Common Pleas Court, a copy thereof was served on plaintiff King with his subpoena to testify.

Plaintiff, Wayne Fisher, alleges that he wishes to participate in a peaceful, non-violent and non-obstructive demonstration in and about the Portage County Court House, Ravenna, Ohio, and that his claim is brought individually and on behalf of all other persons intending to demonstrate and participate in demonstrations in a similar nature. Plaintiff Fisher alleges that his rights under the First and Fourteenth Amendments to the United States Constitution, and the rights of those he purports to represent, are violated by an injunction issued on October 14, 1970 by the judges of the Portage County Common Pleas Court enjoining persons from engaging in picketing, parading, demonstrating, confronting of lawful authority or the passing out of any handbills or the displaying of any placards pertaining in any way to the proceedings of the Special Grand Jury. That order applied to the Portage County Court House and its environs, and originally encompassed the hours between 8:00 a. m. and 5:00 p. m. It has been amended to prohibit such actions at any hour of the day or night.

The motion for preliminary injunction seeks an order restraining and enjoining the defendants from enforcing the provisions of the injunctions of September 5, 1970 and October 14, 1970 referred to above.

Defendants' motion for dismissal is based on the contention that this Court lacks jurisdiction over the subject matter, in that 28 U.S.C. § 2283 precludes the granting of injunctive relief against state court proceedings. It has been held that § 2283 is not a bar to relief in all cases, Honey v. Goodman, 432 F.2d 333, Sixth Circuit Court of Appeals, 1970, and cases cited therein; Machesky v. Bizzell, 414 F.2d 283 (CA 5, 1969). It is this Court's opinion that the instant case falls within the exceptions to

§ 2283, and, accordingly, the motion to dismiss will be denied.  ✓

Before reaching the merits of the controversy herein, there are certain preliminary matters which must be considered.

A threshold question is the applicability of the abstention doctrine to this case. See Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); cf. Appalachian Volunteers, Inc. v. Clark, 432 F.2d 530 (CA 6, 1970). The abstention doctrine calls upon the federal courts to refrain from the exercise of jurisdiction in cases where an adequate remedy is available in the state courts.

Although there are potential abstract problems with regard to the abstention doctrine herein, in that differing considerations may apply to the opportunity of those persons actually served with the restraining order pertaining to grand jury witnesses and the completely ex parte order regarding demonstrations, and the procedures available under Ohio law to challenge either of said orders, this Court does not believe that those issues need be explored.

Since the institution of this action, the state court has had the opportunity, ex parte, to review both orders and make any modifications thereof which ✓ the law demands. The injunction on Grand Jury witnesses has been presented to the state court in an action instituted on behalf of the President of Kent State University to void the same and two proceedings in contempt for violation thereof. Although guilty pleas have been accepted in the contempt cases, Judge Jones testified that he has withheld sentencing therein, and action on the other suit instituted in his court, in deference to this proceeding.

▪ It thus appearing that having had the direct opportunity to make a prior determination of the scope and validity of one of the orders, and time to make a similar determination as to the other, the state court has declined to exercise its jurisdiction in favor of the

ruling herein. Under these circumstances, this Court finds that application of the abstention doctrine is not called for.

A second issue which must be considered before reaching the merits of this controversy is whether the state court's ex parte issuance of the orders in question renders them procedurally defective, so as to require this Court to set them aside. Plaintiffs rely on the Supreme Court ruling in Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968), in support of the contention that the ex parte nature of these orders renders them unconstitutional.

This Court considers the factual context of the *Carroll* ruling sufficiently distinguishable from this case so as not to be controlling authority herein.

In the *Carroll* case an ex parte order was issued restraining an organization known as the National States Rights Party from holding rallies or meetings "which will tend to disturb and endanger the citizens of the County." The Supreme Court struck down the action of the state court, stating:

> We need not decide the thorny problem of whether, on the facts of this case, an injunction against the announced rally could be justified. The 10-day order here must be set aside because of a basic infirmity in the procedure by which it was obtained. It was issued ex parte, without notice to petitioners and without any effort, however informal, to invite or permit their participation in the proceedings. There is a place in our jurisprudence for ex parte issuance, without notice, of temporary restraining orders of short duration; but there is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate. Id, p. 180, 89 S.Ct. p. 351.

The distinguishing factor of the *Carroll* decision is that in that case there

**656**

was an identifiable group sought to be restrained, and that no attempt was made to reach that group before the restriction of the order was placed upon it. In this case, the Grand Jury witnesses were served with a copy of the restraining order affecting them at the time they were summoned. As to the order banning demonstrations, there was no readily identifiable group, such as the National States Rights Party, upon whom service could be had.

For these reasons, the Court does not believe that the decision in Carroll v. President and Commissioners of Princess Anne compels the conclusion that the ex parte nature of the orders under consideration herein renders them fatally defective.

There is, however, language in the *Carroll* decision which this Court considers highly relevant to the issues on the merits of this controversy. The Supreme Court stated:

> An order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field, the State may not employ "means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." * * * In other words, the order must be tailored as precisely as possible to the exact needs of the case. Id, pp. 183–184, 89 S.Ct. p. 353.

Turning now to the merits of this action, there are again certain general principles of law which are so firmly established as to be recognized by all concerned.

The right of free speech is universally recognized as one of the most precious rights guaranteed by the First Amendment to the United States Constitution, and restraints upon its exercise are not lightly imposed. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

It is now recognized that public demonstrations come within the protection of the First Amendment, as an expression of free speech and assembly. Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

It is also generally recognized that selective restraint upon the right of free speech cannot be countenanced by the courts. Cox v. Louisiana, supra.

Prior restraints of the exercise of the right of free speech bear a heavy presumption against their constitutional validity. Bantam Books Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

Infringement of the right of free speech, or other rights protected by the First Amendment, of itself constitutes irreparable injury. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116 (1965).

On the other hand, the right of free speech is not an absolute right, and may be restrained when the exercise of that right would present a clear and present danger to the public welfare. Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962).

Further, government officials may impose reasonable regulations and restrictions on the use of the public streets, without infringing on First Amendment rights. Cox v. Louisiana, supra.

With these rules as a predicate, the Court will now consider the question of the injunctive order restraining all statements by witnesses appearing before the Grand Jury.

Under the statutes of the State of Ohio, all members of a grand jury are administered an oath which, in pertinent part, provides:

> The counsel of the state, your own, and your fellows, you shall keep secret unless called on in a court of justice to make disclosures. Ohio Revised Code § 2939.06

Similarly, the Ohio statutes impose an obligation of "secrecy to not disclose any

testimony taken or heard" upon the official reporters of the grand jury. O.R.C. § 2939.11. However, the statutory provisions pertaining to witnesses before a grand jury in Ohio require only that an oath to truly testify be administered, O. R.C. § 2939.13. It thus appears that the Ohio Legislature has made its determination that while the members of a grand jury and the reporters of their proceedings must be bound to an oath of secrecy, no such restraint is required as to witnesses who appear before the grand jury.

The Congress of the United States has come to the same conclusion. Rule 6(e) of the Federal Rules of Criminal Procedure presently provides a prohibition upon disclosure of "matters occurring before the grand jury [upon] a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony." The rule further provides that "no obligation of secrecy may be imposed upon any person except in accordance with this rule." Prior to the adoption of Rule 6(e), many United States District Courts required an oath of secrecy of grand jury witnesses. The "Notes of Advisory Committee on Rules" specifically states that:

> The rule does not impose any obligation of secrecy on witnesses. The existing practice on this point varies among the districts. The seal of secrecy on witnesses seems an unnecessary hardship and may lead to injustice * * *.

The fact that both the Legislature of the State of Ohio and the Congress of the United States have seen fit to impose no obligations of secrecy upon grand jury witnesses is not determinative of the question of whether the injunctive order under review herein, which does impose such a restraint, is violative of constitutional rights. However, these factors must be taken into consideration in resolving the question of whether the public interest requires the restraints imposed by the Common Pleas Court of Portage County.

It has been held that limited restraints upon the disclosure of testimony by witnesses before a grand jury are within the authority of the courts and not an abridgment of the First Amendment rights of free speech. Goodman v. United States, 108 F.2d 516 (CA 9, 1939); United States v. Central Supply Association, 34 F.Supp. 241 (D.C.N.D., Ohio, 1940); 38 Am.Jur.2d, Grand Jury, § 40. However, it has also been said that the duty of secrecy on the part of witnesses before a grand jury is limited to the proceedings before that body and does not relate to everything which occurred in the grand jury room, and that the rules relating to disclosure of grand jury proceedings by witnesses before that body have always been more liberal than those relating to the jurors themselves. 38 Am.Jur.2d, Grand Jury, § 41.

In the absence of any specific restraint, a grand jury witness is at all times free to discuss his testimony outside the jury room. People v. Ianniello, 21 N.Y.2d 418, 288 N.Y.S.2d 462, 235 N.E.2d 439 (Ct.App., 1968). It has been held that in the absence of any restraint knowledge of witnesses is not immunized from discovery merely because they may have testified before a grand jury, Philadelphia Electric Company v. Anaconda American Brass Co., 41 F.R.D. 518 (D.C.E.D.Pa., 1967), and that allowing a grand jury witness to review his testimony before that body does not endanger grand jury secrecy, and thus is not an improper disclosure of grand jury proceedings. United States v. American Radiator & Standard Sanitary Corporation, 45 F.R.D. 477 (D.C.W.D.Pa., 1968).

It has further been held that the same considerations do not necessarily apply regarding witness secrecy once an indictment has been issued, and that at that time witness secrecy is no longer required, State ex rel. Clagett v. James, 327 S.W.2d 278 (Mo.Sup.Ct., 1959); Rowell v. State, 39 Ala.App. 613, 615, 105 So.2d 877 (1958).

The court in Rowell v. State, supra, construing a statutory provision similar

to that of Ohio imposing an obligation of secrecy as to "the counsel of the state, your own, and your fellows" held that such restriction related only to the debates, deliberations, matters no billed and voting of the grand jury.

The historical basis for the rule of grand jury secrecy is well covered in the decisions in Goodman v. United States, supra, United States v. Central Supply Association, supra, and United States v. Scott Paper Company, 254 F.Supp. 759 (D.C.W.D.Mich., 1966). The bounds of the rule of secrecy are also recognized in those decisions. In Goodman v. United States, supra, 108 F.2d at page 518, it is stated:

> In a preliminary way it may be observed that there is no difficulty in understanding what the oath means. The parties are agreed that *a witness who takes it is not deprived of the right to use his knowledge, but is precluded merely from disclosing what his testimony was*—in other words, from revealing what occurred in the grand jury room. (emphasis added)

Similarly, Judge Wilkin of this court in United States v. Central Supply Association stated:

> Counsel for defendants quote Housel & Walser, Defending and Prosecuting Federal Criminal Cases, to the effect that: "Witnesses before the grand jury may state to any one and every one what they testified to. The veil of secrecy is hung only upon the grand jurors." If by "what they testified to" is meant their statement to the grand jury during its deliberations, the statement is too broad. If, however, the words mean merely that the witnesses are free to relate the facts within their knowledge acquired beyond the grand jury room, then the statement is correct. *It is conceded by all counsel that the oath of secrecy does not preclude the witnesses from informing defendants or others as to their knowledge of facts obtained beyond the confines of the jury room.* In that field defendants are as free to

conduct inquiry as is the grand jury. In fact the oath requires of the juror merely that he "will not divulge anything that transpires in this grand jury room". But, as to what occurred there, the veil of secrecy is hung not only over the grand jurors, but over all who were present. supra, 34 F. Supp. p. 245 (emphasis added)

The reasons for the rule of grand jury secrecy are enumerated by Judge Wilkin in the *Central Supply Association* decision as follows:

1. To prevent the escape of those whose indictment may be contemplated.

2. To insure the utmost freedom to the grand jury in its deliberations by protecting them from the importunity and sinister influence of persons suspected and their friends.

3. To prevent subornation of perjury or tampering with witnesses who appear before the grand jury and later appear at the trial.

4. To protect witnesses, so as to encourage them to appear, make complaints, and testify fully.

5. To protect the good names of innocent persons investigated but not indicted. Id, p. 245

It is this Court's opinion that when the foregoing rules on grand jury secrecy are taken into conjunction with the basic law on the right of free speech, the injunction restraining all grand jury witnesses from speaking out with reference to the comments of the Special Grand Jury must fall as being overly broad.

The events which occurred at Kent State University in the Spring of this year are a matter of national social, political, and moral concern and debate.

The report of the Special Grand Jury issued in conjunction with the indictments returned goes far beyond consideration of the offenses on which the indictments are based. It considers the conduct of not only those charged with

violations of the law but also makes a critical report of the actions and conduct of the officials of Kent State University, the Ohio National Guard, and others caught up in the events which transpired at the University. It condemns the conduct of the University officials and certain professors and students thereof, and seriously draws into question the very delicate matter of academic freedom.

Under the terms of the injunction issued by the Portage County Common Pleas Court, all persons who appeared as witnesses before the Grand Jury are precluded from answering to the social and philosophical arguments of the Grand Jury, which, in this Court's opinion, represent essentially but one side of the argument. Yet, at the same time, it is these very same persons who likely have the most relevant knowledge to counter the accusations made in the Grand Jury report.

Under the terms of this order, a person who was summoned before the Special Grand Jury and immediately excused would be bound to silence. This order applies not to a limited number of persons who would be key witnesses at any trials on the indictments returned, but, rather, to approximately three hundred individuals who were summoned by the Special Grand Jury.

The basic unfairness of this situation is recognized in the case of In re Petition for Disclosure of Evidence Before the October, 1959, Grand Jury of This Court, 184 F.Supp. 38 (D.C.E.D.Va., 1960). Therein, a federal grand jury had issued a report suggesting referral of the evidence presented before them to the state and city authorities, who thereafter applied to the court for release of the grand jury evidence. That application was denied pending trial of the indictments returned by the federal grand jury. The court did note, however, that the secrecy of the grand jury proceedings was not imposed upon the witnesses, and that the state or city officials could interview them to ascertain what testimony they had offered before the grand jury. In the course of the opinion, the court made the following statement, which this Court believes to be of importance to the instant proceeding:

The jurors had been cautioned by the court not to make a report condemning or commending anyone, but to indict or refuse to indict. The reason against condemnation, the court explained, was its unfairness—that the condemned person would thereafter have no opportunity in court to refute the accusation.

In restraining all persons who appeared before the Special Grand Jury from any public commentary the state court's restraining order goes far beyond the bounds historically recognized as legitimately subject to imposition upon grand jury witnesses. In addition, the indictments now having been returned by the Special Grand Jury and most persons accused having been arrested thereon, several of the historical considerations reviewed herein which have been deemed sufficient to warrant an obligation of secrecy no longer exists. If this order merely limited witnesses who appeared before the Special Grand Jury from publicly disclosing what they stated and/or learned in their appearances before that body, enforcement thereof might be appropriate. That question, however, is not now before this Court.

Continuation of this order in its present form can merely muzzle the rights of debate and dissent guaranteed by the First Amendment of the United States Constitution. If there is a rebuttal to be made to the report of the Special Grand Jury, now is the time that it must be permitted. Publication of the report of the Special Grand Jury has opened the social, political and moral questions posed therein to debate in the public forum. To enjoin any person with immediate knowledge of facts relevant to those issues from commenting on, or criticizing, the report of the Special Grand Jury clearly goes beyond the authority of the state court to protect the

judicial process and, in the opinion of this Court, is a violation of constitutional rights guaranteed under the First Amendment to the United States Constitution.

In oral argument, counsel for defendants urged that the order was appropriate under the holding in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). In his testimony, Judge Jones stated that the primary consideration in the issuance of the order was the obligation which he and Judge Caris believed the *Sheppard* ruling imposed upon the state court to protect the matter before the Special Grand Jury from improper disclosure, and to protect the rights of those persons who might be indicted by the Special Grand Jury.

Sheppard v. Maxwell, supra, does stand for the proposition that trial courts have the right, and even a duty, to issue appropriate orders to protect the integrity of the judicial process and to prevent the trial of cases in the news media. The Supreme Court's ruling, however, does not substantiate the proposition that a total ban on speech by grand jury witnesses is a proper means of securing that end.

Two things are clear from the *Sheppard* holding.

First, any infringement of First Amendment rights in order to preserve a defendant's right to a fair trial calls for a delicate balance of the constitutional considerations involved. A defendant's right to a fair trial cannot be sacrificed in the name of free speech. On the other hand, free speech cannot be arbitrarily subjected to total abrogation in the name of fair trial.

The second consideration is that the right to limit free speech is justifiable in those instances where there is a reasonable likelihood that prejudicial news coverage prior to, or during, the trial will prevent a fair trial.

In this case we are faced with a report of the Special Grand Jury which ranges far afield from consideration of the offenses for which indictments were returned. In this Court's opinion, it cannot be said that any restriction on the right to speak to that report is warranted to protect the rights of defendants to a fair trial on the offenses charged.

Two other matters were raised by defense counsel which warrant comment. It was argued that in a First Amendment case the court should consider the balance of hardship and interest in granting or withholding the relief sought. It was then urged that in this case we are directly dealing with the rights of only the two plaintiffs, that there are only about three hundred persons subject to the order, and that everyone else is free to comment as they see fit. The difficulty with this argument is that the order prevents not only the three hundred from speaking, but the rest of the world from hearing. Communication is not a one-way thing, and any restriction on the right of even one person to speak imposes a concomitant restriction on all those whom he might address.

It was also argued that this broad order should be sustained in that it would be a difficult burden on the trial court to draw a proper order. The answer to this is that difficulty in complying with the law has never been an excuse for disregard thereof. A further answer is that a review of the controlling decisions in this area should disclose the proper bounds of any such order and the appropriate procedures to be followed in entry of the same.

Taking up next the injunction prohibiting all demonstrations against the Special Grand Jury in the vicinity of the Portage County Court House, the Court is of the opinion that it, too, must fall as a violation of constitutional rights.

This Court can understand why the judges of the Common Pleas Court of Portage County might issue such an injunction at the time the report of the Grand Jury was about to be released. A

massive demonstration at that time could have been disruptive of the Grand Jury's work, and a reasonable fear that such a demonstration might degenerate into a violent confrontation could have existed. Judge Jones also testified that about the time the order was issued threats had been made against his life and those of two special prosecutors. A threat had also been received with reference to the court house building.

This Court need not determine whether the initial ex parte issuance of this order, under conditions which the state court deemed to constitute an emergency, was violative of constitutional rights, for that question is moot. It is the continuation of the order which is the critical question.

The Constitution of the United States protects the right of peaceful assembly and protest, and prohibits selective discrimination of the right of free speech.

■ Public officials may impose reasonable restraints upon public demonstrations, for the law recognizes the right of reasonable regulation. Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) speaks quite clearly to this problem. In this Court's opinion, reasonable restraints could include restrictions on the size of any demonstration, the route thereof, the time when it could be held, and the requirement of fair compliance with any local licensing regulation. It is also this Court's opinion that a total ban on all demonstrations at the Portage County Court House which would tend to be disruptive of the court's business while in session, or which would tend to influence matters under the consideration of a grand or petit jury would not, on its face, be violative of constitutional rights. Further, any person who committed criminal offenses in the course of a demonstration would, of course, be subject to prosecution therefor.

The continuation of this order in its present form is a clear violation of constitutional rights. This order bans only demonstrations by persons protesting the actions of the Special Grand Jury, and does so for all twenty-four hours of the day. It leaves the door open for all other groups to mount demonstrations, no matter how massive or uncontrolled, at any time at the same location from which those opposed to the Special Grand Jury's actions are barred. This is a clear case of selective discrimination.

The order would further prohibit a single person from passing out handbills across the street from the court house. This Court shares the concern of the judges of the Common Pleas Court of Portage County for the safety of the court house and those therein in these days when a small group of mindless persons appears to believe that the bombing of public and private buildings is an appropriate means to express dissent. However, the presence of a single protestor in the vicinity of the court house, in the absence of strong evidence to the contrary, cannot be considered as presenting a clear and present danger. This order, therefore, is overly broad and a violation of constitutional rights.

If the public officials of Portage County have reason to believe that demonstrations, or related activities, against the Special Grand Jury will present a clear and present danger to the public welfare and safety, or will hinder or interfere with the proper conduct of the affairs of the Common Pleas Court of Portage County, their duty is to endeavor to impose reasonable controls and restraints thereon. To impose a total and selective ban on such conduct is an infringement of the constitutionally guaranteed right of free speech. Exercising the right of reasonable regulation, public officials may not wield an axe when a scalpel is required.

This Court is bound, under the law, to grant plaintiffs, and other similarly situated, the right to exercise their constitutional privileges. The Court would urge that they use reasonable restraint in that regard. It cannot be forgotten that among the precipitating factors leading to the ultimate confrontation at

Kent State University was the burning of private property and the disruption of the rights of citizens of the City of Kent, Ohio. While the Constitution guarantees the right of peaceful assembly and the right to petition, it does not condone violence or the destruction of public or private property. Personal vilification of, and physical attacks upon, our public officials are abhorrent to all who believe in the rule of law. Causes can be espoused without trampling upon the rights of others. Those individuals who violate the law by burning, bombing and destroying are, and should be, subject to prosecution for their acts.

The basic function of a university is to educate. The basic purpose of students enrolled in our universities is to secure the education offered. Both the university and its students are entitled to pursue those ends free from disruption by dissident groups. While those students who disagree with the policies of others have a constitutional right to advance their positions, they have no right to bomb, burn, and interfere with the rights of the vast majority who attend our universities in the pursuit of an education. It appears to this Court that those dissidents who have pursued a pattern of anarchy are but a small minority within the academic society, but their violent actions have seriously interfered with the free exercise of the civil rights of the vast majority. Lawlessness, however, is self-defeating. As dramatic as these violent demonstrations are, they engender dread and distrust, but not respect, and turn thinking people away from the positions and attitudes of those assailing our society.

This Court realizes that the great issues of today, such as the war in Southeast Asia, involuntary induction in the Armed Forces brought about by the Selective Service Act, and the racial situation within the United States, create strong feelings in the advocates of conflicting positions. There is, of course, a desire to bring such points of view before the public in the most effective manner. Protest against the stands of others has a legitimate place in such a dialogue. It is, however, imperative that those protests and demonstrations be conducted in such a manner that the rights of all concerned, and of the public in general, are not infringed, and that when the debate is carried on in the academic community, students seeking an education can do so without interference or interruption, and the administration of the educational institution can carry out its duties free from harassment.

An order will be entered granting a preliminary injunction restraining the defendants from enforcing the two restraining orders attacked herein. Entry of such order is not to be construed as foreclosing the judges of the Common Pleas Court of Portage County from issuing further orders within the bounds of the constitutional limitations and procedures controlling thereon.