### UNITED STATES v. GARSSON et al.

(District Court, S. D. New York. February 1, 1923.)

1. **Indictment and information ⟨key⟩137(3)—Presence of stenographer held not ground for quashing indictment.**

    Presence in grand jury room of stenographer who had been appointed as clerk by the Attorney General, and who took notes of the testimony, *held* not ground for quashing indictment.

2. **Judges ⟨key⟩25(2)—Designated judge might receive indictments after his designated period ended, he having previously fixed time of filing.**

    Where district judge designated to sit in another district until November 1st, and for such further time as might be required to complete unfinished business, was on November 1st engaged in trying defendants, whose codefendants had pleaded guilty but had not been sentenced, his powers continued until disposition of such codefendants by permitting them to withdraw their pleas and plead not guilty on November 22d, and where, before that time, he ordered grand jury dismissed and allowed until November 23d for filing of indictments already found, such indictments were unfinished business which he had power to receive on November 23d.

3. **Judges ⟨key⟩25(2)—Amendment of statute held not to affect power to provide that designated judge's power shall continue until unfinished business completed.**

    The amendment of Judicial Code, § 18, on September 14, 1922, to provide that, when trial has been entered upon before designated judge's period of service has expired, period of service shall be extended until the trial is concluded, extends and does not limit terms as designated and does not affect power of Chief Justice to designate judge to sit until date specified and for such further time as may be required to complete unfinished business.

4. **Indictment and information ⟨key⟩137(4)—Not quashed because grand jury received witness' opinion.**

    Indictment sustained by other sufficient evidence will not be quashed because grand jury received incompetent opinion of witness.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. **Indictment and information** ⚙═137(1)—**Grand jury's indignation by reason of evidence not bias.**

Indignation of grand jury aroused by the evidence against defendants does not constitute bias authorizing quashing of indictment.

6. **Criminal law** ⚙═627½—**Inspection of minutes to make case for quashing indictment denied.**

Motion to inspect minutes of grand jury in order to make case for quashing indictment denied.

Irving Garsson and others were indicted for offenses, and they move to quash the indictments and for inspection of the minutes of the grand jury. Motions denied.

Motions to quash five indictments upon stipulated facts. Three points were raised: First, that a stenographer was present in the grand jury room and took notes of the testimony. The stenographer had been appointed as a clerk by the Attorney General. Second, that Judge Foster, District Judge from Louisiana, who received the indictments, was holding court after the expiration of his appointment by the Chief Justice. Third, that it appeared that incompetent and prejudicial evidence was introduced before the grand jury and that they had shown bias against the defendants. With these motions was coupled a motion to inspect the minutes of the grand jury.

John N. Johnston and Elijah N. Zoline, of New York City, for Garsson.

Charles E. Buchner, of New York City, for I. M. Wormser.

John Holley Clark, Jr., of New York City, for the United States.

LEARNED HAND, District Judge (after stating the facts as above). [1] As to the presence of a stenographer in the grand jury room, I need only refer to Wilson v. U. S., 229 Fed. 344, 347, 143 C. C. A. 464; U. S. v. Morse et al., 292 Fed. 273, Opinion of A. N. Hand, J., filed September 27, 1922.

[2] The second objection is this: Judge Foster's designation appointed him to sit "during the period beginning September 1, 1922, and ending November 1, 1922, and for such further time as may be required to complete unfinished business." The Chief Justice signed it on June 2, 1922. On September 14, 1922 (42 Stat. 837), the Judicial Code was amended, and to section 18 a proviso was added which is applicable to such appointments as these, though they are not made under that section, but under section 13. This proviso reads as follows:

"In case a trial has been entered upon before such period of service has expired and has not been concluded, the period of service shall be deemed to be extended until the trial has been concluded."

On November 1, 1922, Judge Foster was engaged in trying certain defendants under an indictment, as to whom the jury brought in a verdict of not guilty on the seventeenth. The rest of the defendants in that cause had, however, pleaded guilty, and had not been sentenced. On the 22d, Judge Foster allowed these defendants to withdraw those pleas and plead not guilty. This terminated his conduct of the case in question. On November 21, 1922, after the acquittal of those defendants on trial, but before the withdrawal of the pleas of guilty of the others, Judge Foster learning that the grand jury had

given out certain information to the press, called them before him and directed that they be discharged. The district attorney thereupon said that they had "found" several indictments which he begged leave to have them prepare and file that day. The judge agreed to allow them until the 23d to do so. In accordance with this leave all the indictments in question were duly filed on the 23d.

Judge Foster's unfinished business at least did not terminate with the acquittal of those who stood trial. The judge had yet to dispose of those who had pleaded guilty, presumably by a sentence. On November 22d he did dispose of their cases by allowing them to withdraw their pleas. While this "business" lasted he was authorized to perform all the duties of a local district judge, among which was that of receiving indictments. Had these indictments been handed up on the 21st, when the district attorney offered to have them prepared, the case therefore would be free from any doubt. However, they were not found in fact till the 23d, and the question is whether to receive them was part of Judge Foster's "unfinished business." I agree that it was not business unfinished on November 1, 1922, because the grand jury's business is not the judge's. But since his term for all purposes continued till the 22d, a matter which had come up within that time and which he for convenience had put over beyond the conclusion of the cause seems to me to be within the phrase, "to complete unfinished business."

I need not hold that if he had taken up something new on November 23d he would have had jurisdiction. The judge did nothing of the kind. These indictments had come up before him within the period when he had unquestioned jurisdiction. I think that his appointment must have been understood to cover all routine matters, of which this was one, arising while the cause was on, and that he was authorized to finish anything so arising after having once taken jurisdiction over it. The appointment is to be read in the light of what it was meant to accomplish, and it would be absurd to hold that the judge must delay the disposal of the pleas in order to complete such business as this.

[3] The proviso of the Act of September 14, 1922, is not in limitation of the terms as designated, but in extension of them, assuming it applies to designations then in existence at all. It gives an extension when the designation does not contain any, and does not affect the power of the Chief Justice to make the designation last ex proprio vigore until the expiration of business unfinished on a calendar day. Thus, the point is not good, even admitting that the limitation upon these designations can affect the powers of the judge, so as to make them subject to attack for defect of jurisdiction. That is a point I do not find it necessary to decide.

[4] The last point is also bad. In the letter which the grand jury delivered to the press appeared the sentence:

"Mr. Appleby further testified that had he been in Mr. Day's position he would have suspended the agent referred to and recommended his dismissal."

It is probably true that the "agent" in question was one of the defendants, though the proof is mere inference, without the minutes. The evidence was indeed incompetent, as it indicated Appleby's opinion that the defendant deserved dismissal. I cannot say that there was not

enough evidence outside of it to indict, and it would be absurd to assume that the opinion of a witness even on the very issue—though this was strictly not the issue—alone caused the jurors to indict. It introduced no irrelevant issue, likely to excite their minds against the defendant, like the proof of other crimes, nor did it impute to him odious qualities, nor was it an inflammatory harangue. No court would even set aside a conviction because a witness had slipped in as evidence his opinion of the defendant's guilt. Juries are not leaves swayed by every breath.

[5] Nor do I see the slightest bias towards the defendants. . The grand jury was probably indignant at what it had heard, and apparently gave irregular expression to its feelings. But that is nothing. No living man, judge or juror, ever succeeded in detaching all emotion from his conclusions. All we have the right to ask is that he decide only on the relevant facts; if the facts arouse his feelings, there is no shame to him in that. I have not the slightest right to suppose that this jury were influenced by anything except what they heard in their room, and I certainly shall not upset their conclusion because that did not leave them neutral and indifferent.

[6] Finally, the defendants, recognizing that it is difficult to make a case for quashal by the scraps of evidence accessible, move for inspection of the grand jury's minutes. I am no more disposed to grant it than I was in 1909. U. S. v. Violon (C. C.) 173 Fed. 501. It is said to lie in discretion, and perhaps it does, but no judge of this court has granted it, and I hope none ever will. Under our criminal procedure the accused has every advantage. While the prosecution is held rigidly to the charge, he need not disclose the barest outline of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least fair doubt in the minds of any one of the twelve. Why in addition he should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see. No doubt grand juries err and indictments are calamities to honest men, but we must work with human beings and we can correct such errors only at too large a price. Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. What we need to fear is the archaic formalism and the watery sentiment that obstructs, delays, and defeats the prosecution of crime.

The motions are denied.