486

## UNITED STATES
### v.
## GENERAL MOTORS CORP.
### Civ. A. No. 1461.

United States District Court,
D. Delaware.

June 7, 1954.

Leonard G. Hagner, U. S. Atty., and H. Newton White, Jr., Asst. U. S. Atty.,

Wilmington, Del., Stanley N. Barnes, Asst. Atty. Gen., and James E. Kilday and E. Riggs McConnell, Sp. Assts. to the Atty. Gen., for the United States.

Aaron Finger (of Richards, Layton & Finger), Wilmington, Del., for defendant.

LEAHY, Chief Judge.

This action is for triple damages for alleged violation of the Elkins Act, 49 U.S.C.A. § 41(3). Plaintiff United States contends Baltimore & Ohio Railroad favored General Motors Corporation with a rebate of the partial cost of defendant's plant site and water facilities in connection with the construction of its assembly plant adjacent to the railroad's lines at Wilsmere, Delaware.

The transaction was presented to two Federal Grand Juries under criminal provisions of the Elkins Act, once in 1951 and again in 1952. The first jury indicted B & O and the second returned a "no true bill" in GM's favor. Thereafter, this suit against GM alone for civil penalties was begun. The statute of limitations has run on further criminal proceedings against defendant.

In preparation for trial, defendant filed a FR 34 motion, Fed.Rules Civ.Proc. 28 U.S.C.A., here considered, asking for an order directing the United States Attorney to produce for inspection and copying the transcripts of the 1951–52 Grand Jury hearings. No reported case has been cited or found in which a defendant has requested in a civil action production of such transcripts under FR 34.[1] The matter should be decided on general principles of long standing, designed to protect and preserve the efficacy of our Grand Jury system.

Discovery under the Federal Rules of Civil Procedure, while of extensive scope, is not without its limits. It must be

---

1. I am informed the precise question was raised in United States v. Morgan Stanley & Co., D.C.S.D.N.Y., 76 F.Supp. 621, and on December 8, 1948, Judge Medina peremptorily denied the defendants' requests for production in a verbal ruling from the bench.

halted when it attempts to invade ground reserved for loftier reasons than thoroughness of preparing one's case on the civil side of the court. The instant motion trespasses such a boundary—the attempt to procure the proceedings before a Federal Grand Jury. Time after time in criminal cases courts have denied defendants' motions to examine grand juries' transcripts pending trial.[2, 2a]

In ancillary civil actions, reasons for production can not be more compelling. Generally, they are much less cogent. Protection of the grand jury process it-

2. In United States v. Byoir, D.C., 58 F. Supp. 273, affirmed, 5 Cir., 147 F.2d 336, the Texas District Court did approve disclosure to defendant for inspection by the New York Court if it so desired. Defendant sought disclosure of the Texas Grand Jury minutes to disprove probable cause in the Government's attempt to remove him from New York to Illinois. However, that decision does not control the present issue, and further, the subpoena duces tecum addressed to the U. S. Attorney in New York was quashed by order of Judge Leibell, February 17, 1945. See Vol. No. 4, 1950, Law Forum (U. of Ill.) 593 at 610.

2a. United States v. Papaioanu, D.C.Del., 10 F.R.D. 517; United States v. Violon, C.C.S.D.N.Y., 173 F. 501; United States v. Rubin, D.C.D.Conn., 214 F. 507; United States v. Perlman, D.C.S.D.N.Y., 247 F. 158; United States v. Gouled, D.C.S.D.N.Y., 253 F. 242; United States v. Silverthorne, D.C.W.D.N.Y., 265 F. 853; United States v. Lydecker, D.C.W. D.N.Y., 275 F. 976; United States v. Garsson, D.C.S.D.N.Y., 291 F. 646; United States v. Morse, D.C.S.D.N.Y., 292 F. 273; United States v. Herzig, D. C.S.D.N.Y., 26 F.2d 487; United States v. Oley, D.C.E.D.N.Y., 21 F.Supp. 281; United States v. Proctor & Gamble Co., D.C.D.Mass., 47 F.Supp. 676, 677; United States v. Potts, D.C.M.D.Pa., 57 F.Supp. 204; United States v. National Wholesale Druggists' Ass'n, D.C.D.N.J., 61 F.Supp. 590; Metzler v. United States, 9 Cir., 64 F.2d 203; United States v. Molasky, 7 Cir., 118 F.2d 128, reversed on other grounds United States v. Ragen, 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383; United States v. Cohen, 2 Cir., 145 F.2d 82, certiorari denied, 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637; Shushan v. United States, 5 Cir., 117 F.2d 110, 133 A.L.R. 1040; Friscia v. United States, 5 Cir., 63 F.2d 977; United States v. Smyth, D.C.Cal., 104 F. Supp. 283; United States v. Crolich, D. C.Ala., 101 F.Supp. 782; United States v. Owen, D.C.Mo., 11 F.R.D. 371; cf. United States v. White, D.C.N.J., 1952,

104 F.Supp. 120; In re Bullock, D.C.D. C., 103 F.Supp. 639.

Goodman v. United States, 9 Cir., 108 F.2d 516, at page 519, 127 A.L.R. 265:

"Grand juries have been aptly characterized as 'the voice of the community accusing its members.' In re Kittle, C. C., 180 F. 946, 947. From earliest times it has been the policy of the law to shield the proceedings of these bodies from public scrutiny, and to this end the grand jurors themselves have always been sworn to keep their own counsel and that of the state or of the King. Courts and text writers have advanced various reasons for this rule of privacy. In part the purpose is to protect grand jurors, complainants and witnesses, so that the jurors may deliberate and vote without fear that their conduct will be disclosed elsewhere, and that those who testify may feel free to speak the truth without reserve. Other reasons for the rule are that if the accused should learn that his conduct is under investigation he is likely to flee arrest or to tamper with witnesses; and that one who is unjustly accused, but is exonerated by the refusal of the grand jury to indict, may not suffer injustice by a disclosure that he has been under investigation for the commission of a crime."

United States v. White, D.C.N.J., 104 F.Supp. 120, at page 121:

"Grand jury proceedings are traditionally secret. The veil has not been lightly lifted. A presumption exists that the grand jury proceedings were regular, U. S. v. Proctor & Gamble Co., D.C.Mass., 1942, 47 F.Supp. 676, and inspection has been denied in absence of a strong and positive showing that the indictment was founded solely upon incompetent or illegal evidence, U. S. v. Lydecker, D.C. W.D.N.Y., 1921, 275 F. 976, 978, U. S. v. Silverthorne, D.C.W.D.N.Y., 1920, 265 F. 853, or presented in violation of constitutional rights, U. S. v. Oley, D.C. E.D.N.Y., 1937, 21 F.Supp. 281, or the result of fraud, corruption, or caprice. U. S. v. Gouled, D.C.S.D.N.Y., 1918, 253 F. 242."

self has been the basis for suspending the usual exercise of discovery rights of a litigant. Revelation of the jury minutes may, or may not, have an adverse effect on the particular jurors and witnesses participating in the proceedings whose record is sought, but this alone is not the prime concern. The effect on subsequent proceedings, on jurors, on witnesses, on the privacy of the system itself, is of greater moment. The secrecy is maintained regardless as to what may arise in subsequent collateral litigation, even though long past the event of the Grand Jury's meetings. The very secrecy of the hearings is fundamental to our procedure, whether viewed in an historical perspective or under our current lights. Even in a criminal case, only extraordinary circumstances ever prompt a court to exercise a discretionary power to disclose.

I do not find in the present action for civil penalties any justification for ordering production for inspection and copying the transcripts of the Grand Jury's meetings. It is argued the Department of Justice will have the transcripts of the Grand Jury available and may use them, and such, it is suggested, will be a tactical advantage the discovery rules were designed to eliminate. But defendant, here, has other discovery techniques at its disposal through which most of the information sought and clues to other possible sources may be obtained. The announced intent to use the transcript as an impeachment tool appears to me improper and demonstrates how disclosure could seriously impair the grand jury system, the freedom and effectiveness of its inquiry and deliberation. If a precedent is set that evidence before a grand jury may at some future time be disclosed to the probing examination of civil litigants in preparation of the trial of their cause not alone in a collateral matter but, as in the case at bar, in directly related matters where the inquisitorial examination of the grand jury and

a civil litigant's discovery in preparation for trial encompass the same subject matter and include an identity of events, such precedent would tend to restrict the free function of the grand jury.

My beliefs coincide with those expressed by Judge Learned Hand in U. S. v. Garsson, D.C., 291 F. 646, 649: "It [i. e., the disclosure of the transcript] is said to lie in discretion, and perhaps it does, but no judge of this court has granted it, and I hope none ever will."