In the Matter of the Petition of John B. Jessup, Foreman, Grand Jury for New Castle County, for Instructions.

*(November 4, 1957.)*

TERRY, P. J., sitting.

*Joseph Donald Craven,* Attorney-General, for Petitioner.

*Alexander Greenfeld,* Deputy Attorney-General, for Respondent.

*William S. Potter* (of Berl, Potter and Anderson) and *Clair J. Killoran* (of Killoran and VanBrunt), *amici curiae.*

Superior Court for New Castle County.

TERRY, P. J.:

A proper determination of the questions presented by this litigation are so indispensable to the proper administration of justice that I deem it essential to present all of the factual circumstances, together with my views, concerning the principles of law involved.

The Senate of this State during the present session of the General Assembly adopted Senate Resolution No. 86, which in pertinent part is as follows:

"Providing for a Committee with full power to investigate illegal gambling and related crimes, to hire personnel and making an appropriation therefor.

"Whereas, both the Attorney General and the New Castle County Grand Jury have presented alarming reports concerning wide spread gambling activities in and about the City of Wilmington; and

"Whereas, organized unlawful gambling presents a serious threat to the moral, economic and political life of the citizens of this State;

"Now, Therefore, be it resolved:

"That the President Pro Tempore of the Senate is authorized and directed to appoint a special committee to investigate the nature and extent of gambling and related crimes in this State and report its findings and recommendations to the Senate in January, 1958.

"The said Committee shall select a chairman and secretary from its membership who shall sign the warrants drawn on the State Treasurer.

"That the said special committee shall have all the investigating powers expressed or implied which are possessed by the Senate of the State of Delaware, including the power to subpoena witnesses and administer oaths, and shall remain in being fully vested with such powers until abolished by the One Hundred Nineteenth Session of the General Assembly."

The Grand Jury in this County during the year 1956, at the instance and request of the Attorney General, conducted a most thorough investigation relating to the subject of gambling in and about the City of Wilmington. The Attorney General appeared before the Grand Jury during its hearings; in fact, he supervised the presentation of testimony delving into the subject matter of the investigation. Many witnesses appeared—some by reason of subpoena, others on a voluntary basis—resulting in the taking and transcribing of volumes of testimony.

The Special Committee of the Senate, in furtherance of its purpose, met during the month of September, 1957, and organized by selecting the Honorable Walter J. Hoey as its Chairman and the Honorable Elwood F. Melson, Jr. as its Secretary.

The Committee, by its Chairman and Secretary, caused to be issued on the 25th day of September, 1957, a subpoena *duces tecum* addressed to John B. Jessup, present Foreman of the Grand Jury in and for this County, directing him to appear before the Special Committee on the 30th day of September, 1957. The mandate called for the production of transcripts of testimony of all witnesses who had appeared under subpoena and testified before the Grand Jury during March, April and May, 1956.

The Attorney General on September 26, 1957, representing Mr. Jessup, filed in this Court the following petition for instructions:

"To the Honorable, the Judges of the Superior Court:

"1. I, John B. Jessup, Foreman of the 1957 Grand Jury for New Castle County, have on this 25th day of September, 1957, been served with a subpoena from the Special Senate Committee investigating gambling, to appear on Monday, September 30, 1957, at 10:00 a. m. in the Senate Chamber, Legislative Hall, Dover, Delaware, *duces tecum* all transcripts of testimony of persons who appeared pursuant to subpoenas before the Grand Jury of March, April, and May, 1956, to testify in regards to gambling and related activities in New Castle County.

"2. Your Petitioner has been informed by an opinion of the Attorney General that the above mentioned records are under the control of the Superior Court of New Castle County and in the custody of the Prothonotary. The opinion of the Attorney General indicates that the release of these transcripts is solely within the discretion of this Court.

"3. Your Petitioner prays this Court for instructions as to the manner in which he should respond to the subpoena of the Special Senate Committee.

"Respectfully submitted,
/s/ John B. Jessup
"John B. Jessup, Foreman
"Grand Jury for New Castle County

"Joseph Donald Craven
Attorney General"

Upon the filing of the petitions on September 26, 1957, I designated and appointed William S. Potter, Esquire, of the firm of Berl, Potter and Anderson, and Clair J. Killoran, Esquire, of the firm of Killoran and Van Brunt, *amici curiae* to advise and aid me in reaching a proper determination of certain obvious questions raised under the petition for instructions.

The *amici curiae*, on September 26, 1957, filed the following motion:

"The undersigned, as *amici curiae* appointed by the Court in the above entitled cause, move for the issuance of a rule of this Court, addressed to the Hon. Walter J. Hoey, Hon. Elwood F. Melson, Jr., Hon. Peter Nechay, Hon. Lemuel H. Hickman and Hon. Jacob A. Correll, constituting the Special Committee appointed pursuant to Senate Resolution No. 86, commanding them and each of them to appear and show cause, if any they have, why the subpoena of the said Committee issued September 25, 1957, and to bring with him 'All transcripts of testimony of persons who appeared, pursuant to subpoena, before the Grand Jury during March, April and May, 1956, to testify with respect to gambling and related activities in New Castle County', should not be quashed, and the said John B. Jessup instructed not to respond to the same.

"The undersigned show to the Court as reason for the issuance of such a rule that under the law of Delaware the proceed-

ings of a Grand Jury may not be disclosed except upon order of the Court and then only in furtherance of the administration of justice.

"/s/ Clair J. Killoran
"/s/ W. S. Potter"

On the 26th day of September, 1957, I entered the following order:

"Ordered that Walter J. Hoey, Elwood F. Melson, Jr., Peter Nechay, Lemuel H. Hickman and Jacob A. Correll, constituting the Special Committee appointed pursuant to Senate Resolution No. 86, shall appear in the Superior Court in and for New Castle County on Tuesday, the 15th day of October, 1957, at 10 o'clock in the morning, to show cause, if any they have, why the subpoena *duces tecum* issued by said Committee to John B. Jessup, commanding him to appear on September 30, 1957, should not be quashed.

"It is further ordered that the said John B. Jessup shall not appear in response to said subpoena until the further order of this Court.

"It is further ordered that copies of this order shall be served upon each member of the Special Committee appointed pursuant to Senate Resolution No. 86 and upon John B. Jessup."

Alexander Greenfeld, Esquire, Deputy Attorney General, appeared for the Special Senate Committee on October 15, 1957, the return date of the Rule.

The factual circumstances heretofore stated give rise to two questions for determination:

(1) Is testimony taken before a Grand Jury in this County subject to the control of the Superior Court?

(2) If the answer to Question No. 1 is in the affirmative, should the Superior Court direct that transcripts of testimony taken before the Grand Jury be delivered to a duly constituted

Committee of the General Assembly in response to a subpoena *duces tecum* issued by such Committee?

The first question suggested is one of first impression in Delaware. Its answer must depend upon analysis of the historic genesis of the Grand Jury as an instrumentality of justice, together with its purposes and operations as they were and are at common law, for, while in many other States the functioning of the Grand Jury has been circumscribed (see Note, 52 *Har. Law Rev.* 151; 37 *Minn. Law Rev.* 586), in Delaware the Grand Jury has preserved a close likeness to its common law progenitor.

The origin of the Grand Jury has given rise to protracted discussion on the part of learned writers and has been productive of widely different conclusions. The Grand Jury is an institution of English speaking countries, of historic interest by reason of the obscurity surrounding its origin, its gradual development, and the part it has played in some of the most stirring events in the history of the Anglo Saxon race; of political interest by its effectual protection of the liberty of the subject from an arbitrary power of government; of legal interest in that its power and action has been said to be repugnant to "the experience and theory of English law." It has been extravagantly praised as the "security of Englishmen's lives" (Lord Summers, London 1694), the conserver of his liberties, 4 *Bl. Com.* 349, and the noblest check upon the malice and oppression of individuals and States; *Addison App.* 18. It has been bitterly assailed as "purely mischievous", *Bentham Rationale of Judicial Evidence*, Vol. 2, page 312, and a "relic of barbarism", *Grand Juries*, 29, L. T. 21.

In exploring the origin of the Grand Jury we are reminded that centuries were required to develop our present day notions of justice as they have accreted under the common law. As the methods of determining guilt or innocence took shape, banishing forever the barbaric trial by battle or appeal (see *Thayer, The Older Modes of Trial*, 5 *Har. Law Rev.* 35), so was the shaping of our grand jury system most gradual.

While it is true, as one distinguished scholar stated, that "the long shadows of history shroud the precise point in time when the first Grand Jury was established in an English speaking county", *Kaufman, The Grand Jury—Its Role and Its Powers,* 17 *F. R. D.* 331, it is equally true that we can establish with reasonable certitude the year 1368 as marking the birth of the Grand Jury as we recognize it today; that is to say, as a County body. Prior to that time each hundred had its bailiff who called into being the Hundred Inquest or Jury, then in 1368, toward the end of the long reign of Henry III, there was established the still preserved practice of calling the accusatory body into being by County. To be distinguished from the functioning Hundred Inquest, the County Jury became known in the patois of the Normans as "Le Grande Inquest."

As the influence and activity of the Grand Inquest increased, the Hundred Inquests withered until, gradually, they ceased to make presentments altogether and developed into the partial fact finders who are today the Petit Jurors. For helpful historical discussion in this connection, see *Edwards, The Grand Jury (G. T. Bisel Co., Phila.,* 1906).

The independence of action which had become solely a hallmark of the Grand Jury was bulwarked in the now familiar case of the *Earl of Shaftesbury.* The year was 1681. A Grand Jury had answered and the King's counsel had insisted that the Jury hear in open Court evidence of certain treason charges lodged by the Crown against the popular Earl. After listening to the witnesses the jurors demanded and were accorded the right to interview them in private chambers. Upon returning they wrote upon the indictment, which the Crown had expected they would rubber stamp, the word "ignoramus", and they gave only their conscience as the reason for declining to indict. So it is that the Grand Jury had taken shape and was established in concept and function and brought to this country by Englishmen when the settlement of America was begun.

Although the Grand Jury is traditionally a gadfly with great latitude to investigate and indict, it does not and cannot

exist in a vacuum and it cannot be rightfully considered a wholly independent soul. The necessity of some guarantee of control by the Court over the Grand Jury was well stated in *Blau v. State,* 1903, 82 *Miss.* 514, 34 *So.* 153, 155, "that in certain respects the grand jury is to be considered as enjoying a distinct autonomy; that, after they have been organized and charged, part of their legal function is to be performed by them as a separate and independent body, acting by themselves, and apart from the court. The court is neither the keeper of their conscience nor can control in finding facts, but in many other respects they are, of course, subject to the control of the court, and dependent upon it for the execution of powers necessary to the prosecution of their inquiries."

The Grand Jury is today in Delaware as it was at common law, "an appendage of the court." *In re Opinion of the Justices* 1952, 8 *Terry* 117, 88 *A.* 2d 128, 131. Indeed, the Grand Jury is as much a part of the Court as is the Petit Jury. *Ryon v. Shaw, Fla.* 1955, 77 *So.* 2d 455, 48 *A. L. R.* 2d 713; *Petition of McNair,* 1936, 324 *Pa.* 48, 187 *A.* 498, 106 *A. L. R.* 1373; *Ex Parte Savin,* 131 *U. S.* 267, 9 *S. Ct.* 699, 33 *L. Ed.* 150; *United States v. Hill,* 1809, *Fed. Case No.* 15,364, 1 *Brock,* 156; *People v. McCauley,* 256 *Ill.* 504, 100 *N. E.* 182; *People ex rel. Choate v. Barrett,* 56 *Hun.* 351, 9 *N. Y. S.* 321; *Am. Jur. Grand Jury,* Par. 2, page 832.

■ Our Constitution, while it provides the number of members to comprise the Grand Jury for each of the three Counties (Art. I, Sec. 4, *Del. C. Ann.*), allows the Legislature to enact statutes enabling misdemeanors to be tried before inferior tribunals by either information or indictment (Art. 4, Sec. 28), and removes the right to indictment in certain types of election frauds (Art. 5, Sec. 8), in other respects has left unchanged the structure of the common law Grand Jury. To the person subject to trial by Delaware Courts for an indictable offense, the right to Grand Jury presentment is enshrined in the Constitution (Art. 1, Sec. 8) and the powers and attributes of the Grand Jury are as they were at common law. *In re Opinion of the Justices,* 1952, 8 *Terry* 117, 88 *A.* 2d 128.

▪ The Legislature, by conferring criminal jurisdiction upon the Superior Court, made the Grand Jury an arm of this Court. 11 *Del. Code,* § 2701(e). The Superior Court controls the existence of the Grand Jury from its empanelling (10 *Del. Code,* §§ 4510, 4511), through its appearance in Court (10 *Del. Code,* §§ 4513, 4516), through its undertaking of its duties pursuant to oath traditionally administered by the Court, and to its adjournment and subsequent discharge.

▪ By custom and common law, the Grand Jury makes its return to the Superior Court and files its indictments and presentments as well as its report and transcript of its proceedings with the court.

"Minutes of the evidence when properly returned and filed become a part of the records of the court and are to remain in its custody, although the custody thereof is sometimes confided to the prosecuting officer." 38 *C. J. S. Grand Juries* § 44, p. 1064.

"* * * it is as much a part of the court as an institution as is the judge or petit jury. It is called by the court, impanelled by the court and charged by the court. The witnesses who appear before it are subpoenaed by the court and are amenable to the court. It reports to the court and is discharged by the court. *The results of its labors become records of the court.* To say that it is not a part of the court because it performs certain duties and has certain functions which may not be controlled or supervised by the judge, would be no more logical than to say that a petit jury is not a part of the court because a judge may not control its deliberations or its determinations or questions of fact submitted upon a trial." *Wilson v. U. S.,* 8 *Cir.,* 1935, 77 *F.* 2d 236, 242. (Emphasis added.)

Further evidence of the grand jury's role under the common law is the fact that this court may, as at common law, expunge from a grand jury's report, as distinguished from its indictments or presentments, any matter which is offensive or holds a person up to odium or ridicule before the public. *In re Report of Grand Jury of Baltimore City,* 152 *Md.* 616, 137 *A.*

370; *State ex rel. Strong v. District Court of Ramsey County,* 1944, 216 *Minn.* 345, 12 *N. W.* 2d 776; *In re Presentment by the Camden County Grand Jury,* 1952, 10 *N. J.* 23, 89 *A.* 2d 416. Likewise, this court may, in the exercise of its discretion and in the interest of justice, release a witness or juror from his oath of secrecy to permit him to disclose grand jury matter in another proceeding (*Metzler v. United States,* 9 *Cir.,* 1933, 64 *Fed.* 2d 203; *United States v. American Medical Association, D. C. D. C.* 1939, 26 *F. Supp.* 429; *Opinion of the Justices,* 1950, 96 *N. H.* 530, 73 *A.* 2d 433) and even release the minutes of the grand jury's proceedings. *United States v. Procter and Gamble Company, D. C. D. N. J.* 1956, 19 *F. R. D.* 122; *In re Bullock, D. C. D. C.* 1952, 103 *F. Supp.* 639.

■ By Rule 6 of the Rules of Criminal Procedure, *Del. C. Ann.,* the Superior Court may direct a juror, the Attorney General, an interpreter or stenographer, to disclose matters occurring before the Grand Jury, "preliminarily to or in connection with a judicial proceeding," or in connection with a motion to dismiss an indictment. The Federal counterpart of this rule has been held merely to restate the common law authority of the Court to which a Grand Jury makes a return. *United States v. Papaioanu, D. C. D. Del.* 1950, 10 *F. R. D.* 517. Criminal Rule 6 further permits the Court to direct that an indictment be kept secret until the defendant is in custody or has given bail. Finally, it is generally acknowledged that a court under which a grand jury is convened has the inherent power to make such other rules and exercise such other authority as is necessary and appropriate for the proper operation and functioning of the grand jury. *United States v. Central Supply Association, D. C. D. Ohio* 1940, 34 *F. Supp.* 241, 245; 24 *Am. Jur. Grand Jury,* Sec. 40.

From the foregoing it is evident that the grand jury is not, as it were, "a sole independent organ" within the judicial system, notwithstanding its acknowledged right of conducting its deliberations free from the court's intrusion. See *United States v. Smyth, D. C. Cal.* 1952, 104 *F. Supp.* 283, 293.

█ It is my conclusion that testimony taken before the grand jury in New Castle County is subject to the control of the Superior Court.

The second question likewise is one of first impression in Delaware. It concerns the secrecy which the Courts historically accorded to Grand Jury proceedings. The question is: Does this Court have the discretionary power to lift the veil of secrecy and order production of the transcripts herein sought, and, if so, should the Court exercise its discretion in favor of the Committee's request?

We have previously noted that the independence of the Grand Jury became established in the year 1681, and it was at this time that a cloak of secrecy actually began to encompass their proceedings, giving to the jurors freedom of action and freedom of restraint by the Court. *Edwards, Grand Jury,* states, in speaking of the independence of the Grand Jury:

"No longer required to make known to the Court the evidence upon which they acted, meeting in secret and sworn to keep their proceedings secret by an oath which contained no reservation in favor of the Government, selected from the gentlemen of the best figure in the County, and without regard to their knowledge of any particular offense, the three centuries that followed the return of a panel of twenty-four knights, witnessed its freedom of action from all restraint by the court. The independence which the institution had attained was soon to be put to the severest tests, but protected by the cloak of secrecy and free from the control of the court as to their findings, they successfully thwarted the unjust designs of the government."

Because of the secrecy of their proceedings, the Grand Inquest has preserved in large part the balance between efficiency of prosecution and protection of the rights of those accused under various conditions in various countries for centuries.

This secrecy referred to has been the safeguard placed about the Grand Jury and is in accord with modern conditions.

If the proceedings are conducted without this protection, they are futile, and this extra hearing by a Grand Jury is simply a waste of time. The power of the representatives of the people to examine the actions of officials of the government without the kleiglight of publicity is therefore lost.

The Grand Jury's proceedings in Delaware are conducted with that same degree of secrecy as has existed under the common law since the year 1681. The oath administered to a Grand Juror in this State is traditionally the same as it was at common law.

"You, —————, Do solemnly swear on the Holy Evangels of Almighty God (or do solemnly, sincerely and truly declare and affirm) that as Foreman—(or Members)— of this Grand Inquest of the State of Delaware, for the County of New Castle, You shall diligently inquire and true presentments make of all matters and things as shall be given you in charge or otherwise come to your knowledge, touching this present service, the Counsel of the State, your fellows and your own, you shall keep secret, and shall present no person for envy, hatred or malice; nor shall you leave any person unpresented for fear, favor, affection, reward, the hope of reward, but you shall present all things truly as they come to your knowledge according to the best of your understanding, so help you God. (or so you affirm)"

The secrecy under the foregoing oaths extends to all matters occurring before the Grand Jury, including the testimony of witnesses as well as to the deliberations and voting of the Jurors. *VIII Wigmore*, Evidence, Sec. 2360, p. 716; 24 *Am. Jur.*, Grand Jury, Sec. 48, p. 866.

The necessity for secrecy surrounding the proceedings before the Grand Jury is clearly summarized by the Court in the case of *United States v. Amazon Industrial Chemical Corp.*, D. C. Md. 1931, 55 *F.* 2d 254, 261:

"(1) To prevent the escape of those whose indictment may be contemplated;

"(2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictments or their friends from importuning the grand jurors;

"(3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it;

"(4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes;

"(5) to protect (the) innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

This rule of secrecy, however, is not absolute. Exceptions prevail, which are understandable, particularly in trials on indictments returned by the jury. The decisional law is abundant relating to the availability of testimony taken before the Grand Jury for use prior to or in connection with a criminal judicial proceedings. The cases under these decisions fall into two categories—those in which a limited release is sought and frequently obtained of the testimony of an accused or a witness or a grand juror and those cases in which a general release of Grand Jury testimony is sought and rarely granted. In the former category will be found cases permitting a grand juror to testify to impeach a witness before the jury and cases permitting the introduction into evidence against a defendant of a confession made before a Grand Jury. A limited release has also been granted to permit a defendant on trial for perjury committed before a Grand Jury to examine his testimony taken before the Grand Jury. *United States v. Rose,* 3 *Cir.,* 215 *F.* 2d 617; 24 *Am. Jur.,* Grand Jury, Sec. 50.

In the latter category of cases, a general release of Grand Jury testimony has rarely, if ever, been granted. The leading case establishing the Court's extreme reluctance to give a gen-

eral release of Grand Jury testimony to a defendant for use in a criminal proceeding is *United States v. Garsson, D. C. D. N. Y.* 1923, 291 *F.* 646, 649. There Judge Learned Hand denied a defendant's motion to inspect the grand jury's minutes and stated:

"I am no more disposed to grant it than I was in 1909. *United States v. Violon, C. C.,* 173 *F.* 501. It is said to lie in discretion, and perhaps it does, but no judge of this court has granted it, and I hope none ever will."

In instances where a defendant has sought the release of a transcript of Grand Jury testimony, or has sought to examine grand jurors or witnesses before the Grand Jury, the Court, while expressly or impliedly recognizing its discretionary authority to grant such a release in the interest of justice, has found that the policy of maintaining the secrecy of Grand Jury proceedings overrode and outweighed any public interest in disclosure. *State v. Roberts,* 1910, 2 *Boyce* 140, 78 *A.* 305; *United States v. Skurla, D. C.,* 126 *F. Supp.* 711; *United States v. Central Supply Ass'n, D. C.,* 34 *F. Supp.* 241; *United States v. American Medical Ass'n, D. C.* 26 *F. Supp.* 429; *United States v. Brumfield, D. C.,* 85 *F. Supp.* 696; *United States v. Papaioanu,* 10 *F. R. D.* 517. Thus the Court's oft-stated discretion to lift the veil of secrecy when "the ends of justice" or "the rights of the public require it" (Annotation, 127 *A. L. R.* 272, 278), or when "the interest of justice [will] best be sub-served" (*United States v. Skurla, supra*) [126 *F. Supp.* 713] has seldom, if ever, been exercised in the field of criminal judicial proceedings.

The question relating to a general release of Grand Jury proceedings for use by a defendant in a civil action was raised in the case of *United States v. General Motors, D. C. Del.* 1954, 15 *F. R. D.* 486, 488. This case concerned a civil action for damages under the Elkins Act, 49 *U. S. C. A.* § 41(3). The Court, relying primarily on the criminal decisions upon the question, denied the defendant's motion under Fed. Rules Civ. Proc., Rule 34, 28 *U. S. C. A.* to require the United States attorney to produce for the defendant's pre-trial use a grand jury transcript.

The Court rejected defendant's arguments that reason for secrecy no longer existed where the Grand Jury had been discharged and that the release sought was in the interest of justice since the prosecuting attorney has possession of the transcript. The Court discounted the "interest of justice" argument since he concluded that defendant could discover the same information obtained by the Grand Jury by recourse to the rules of discovery. He also rejected defendant's contention that inasmuch as the jury had been discharged, there was no reason not to lift the veil of secrecy from its proceedings, stating:

"* * * Revelation of the jury minutes may, or may not, have an adverse effect on the particular jurors and witnesses participating in the proceedings whose record is sought, but this alone is not the prime concern. The effect on subsequent proceedings, on jurors, on witnesses, on the privacy of the system itself, is of greater moment. The secrecy is maintained regardless as to what may arise in subsequent collateral litigation, even though long past the event of the Grand Jury's meetings. The very secrecy of the hearings is fundamental to our procedure, whether viewed in an historical perspective or under our current lights. Even in a criminal case, only extraordinary circumstances ever prompt a court to exercise a discretionary power to disclose."

"* * * If a precedent is set that evidence before a grand jury may at some future time be disclosed to the probing examination of civil litigants in preparation of the trial of their cause not alone in a collateral matter but, as in the case at bar, in directly related matters where in iquisitorial examination of the grand jury and a civil litigant's discovery in preparation for trial encompass the same subject matter and include an identity of events, such precedent would tend to restrict the free function of the grand jury.

"My beliefs coincide with those expressed by Judge Learned Hand in *United States v. Garsson, D. C.,* 291 *F.* 646, 649; 'It (*i.e.,* the disclosure of the transcript) is said to lie in discretion, and perhaps it does, but no judge of the court has granted it, and I

hope none ever will.' " 15 *F. R. D.* at page 488. To the contrary see *United States v. Proctor & Gamble Co., D. C. N. J.* 1956, 19 *F. R. D.* 122.

I am now confronted with Rule 6(d) and (e) of this Court pertaining to the Grand Jury, which in pertinent part is as follows:

"(d) The Attorney General, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.

"(e) Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the Attorney General for use in the performance of his duties. Otherwise a juror, the Attorney General, an interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceedings or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. * * *"

Rule 6(e) recognizes the substantive rather than the procedural nature of the cloak of secrecy and contemplates that no disclosure shall be had beyond the limits fixed therein, and then only "when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment."

▇ The language employed under the Rule above which permits a disclosure "in connection with a judicial proceeding" raises a substantial doubt of the power of this Court to permit a disclosure of Grand Jury transcripts in non-judicial proceedings. Nevertheless, I think the Rule to be declaratory of the

common law concepts and hold that this Court has the discretionary power to pierce the veil of secrecy when justice demands it—even in non-judicial proceedings.

Now the question arises as to whether this Court should lift the veil of secrecy from the Grand Jury proceedings for use in the Senate Committee's non-judicial proceedings.

Knowledge is essential to understanding, and understanding should precede judging. Thus, in order to legislate, it is necessary to be informed, and investigation is ordinarily a prerequisite to adequate information. Legislative Committees customarily created and proceeding within proper bounds, have adequate power to investigate in order to obtain information required in the rightful exercise of that power and to employ compulsory process for the purpose.

Very few reported decisions have been found in which non-judicial bodies have sought leave of Court to examine minutes of Grand Jury proceedings, or to examine witnesses that had theretofore appeared before the Grand Jury.

*In re Bullock, D. C., D. C.* 1952, 103 *F. Supp.* 639, a Petition of the Commissioners of the District of Columbia seeking to examine the entire minutes of a past Grand Jury proceeding which had investigated a certain police officer under the jurisdiction of the Commissioners, was denied. However, the Court did release to the Commissioners the testimony of the officer in question who had been indicted by the jury and previously tried. The Court premised the releasing of his testimony on the Commissioners' responsibility for the maintenance of the good order of the Police Department, and, probably more important, on the fact that the officer had admitted at the trial that the Commissioners' statement taken of him sometime prior to trial was not complete.

Most significant for present purposes was the Court's refusal to release the testimony of other witnesses before the Grand Jury on the ground that there was no evidence that any

testimony had been omitted in the criminal trial against the police officer, and the records of the trial were available to the Commissioners. Thus, the Court stated:

"In view of this fact and by reason of the common-law emphasis on secrecy this Court takes the position that disclosure made before the Grand Jury by witnesses other than Inspector Bullock have retained their veil of secrecy." 103 *Supp.* 643.

In the Opinion of the Justices, 96 *N. H.* 530, 73 *A.* 2d 433, 435, the Supreme Court of New Hampshire rejected a Petition of the New Hampshire Senate that the Court release from their oath of secrecy the members of a past Grand Jury to permit them to disclose to a Legislative Investigating Committee matters occurring before the Grand Jury. The Court acknowledged that "Under appropriate circumstances, and within narrow limits, a court may permit a grand juror to testify to occurrences during the investigation of the grand jury when such testimony is necessary to promote the cause of public justice or to protect private rights". However, the Court refused to grant the Senate's request because it was uncertain whether the Senate wished to question the jurors as to their votes or opinions or deliberations. The Court stated that the exception to the rule of secrecy had never to its knowledge been extended to such matters and stated that to the extent the Committee wished to investigate other occurrences before the Grand Jury, the Court should not release the jurors from their oath of secrecy except upon a showing of an overriding public interest. In this regard the Court noted—

"The sources of the grand jury's information are readily available to the legislature. The conclusions of the grand jurors on the topic mentioned cannot be considered so far essential to the Senate's investigation as to justify disregard of the requirement of secrecy, or to overbalance the public interest which occasions it."

■ My interpretation of the authorities in this field is that a Court may not release any portion of a Grand Jury proceeding without a showing being made to the Court, (1) that

the public interest in disclosure of the proceeding overrides the public interest in maintaining the secrecy of the Grand Jury proceeding; or (2) that the primary and traditional reasons for maintaining the veil of secrecy around the Grand Jury proceedings are no longer operative. *In re Bullock, supra; U. S. v. Skurla, supra; Opinion of the Justices, supra.*

■ The decisions where release was sought and sometimes obtained in connection with criminal proceedings are not authority that the same criterion of justice governs a release when sought by an investigative body for non-judicial purposes. In the former case, the release is sought so that legal justice may be achieved, while in the latter case the release is sought presumably for the improvement of the administration of justice. This distinction becomes most relevent in determining whether compelling reasons or extraordinary circumstances have been shown for a disclosure. A stronger showing of compelling circumstances must be required where release is sought for the improvement of the administration of justice rather than for the achieving of justice in a criminal proceeding.

I am not free to follow my own inclination in this matter. The discretion that I exercise must be a sound judicial discretion. A proper showing must be made that the public interest in secrecy is overcome by the interest in disclosure. Such is the law where the release is sought for use for or against a defendant in a criminal proceeding, and is also the law where a release is sought for use by a State Legislative Committee for investigative purposes.

■ I am not unmindful of the worthy purpose sought to be served by the Senate Committee, *i.e.* the furtherance of justice, but I find myself compelled to say, under the state of the law and in light of the circumstances here presented, that the public interest to be served by preserving the secrecy of the Grand Jury proceeding with its protection of jurors, witnesses and persons accused but not indicted far outweighs the Committee's request under its subpoena *duces tecum.*

The sources of the Grand Jury's information herein sought are readily available to the Senate Committee. There could be no objection whatsoever to a disclosure to the Senate Committee by the Attorney General or by the Foreman of the Grand Jury of the names of the witnesses subpoenaed to appear before the Grand Jury in 1956. If subpoenaed, and if their testimony be found by the Attorney General (Rule 6(e) of this Court) to be inconsistent with their previous testimony before the Grand Jury, then the Attorney General is in a position to present to the Grand Jury bills of indictment for their action concerning any phase of perjury found to have taken place.

My appreciation is extended to the *amici curiae* for the time and effort expended by them in preparing for me a splendid brief, which deals in general with the subject matter involved.

The petitioner will be ordered not to appear before the Special Senate Committee pursuant to the subpoena *duces tecum* issued by said Committee on September 15, 1957.

An order will be signed upon motion.