113 So.2d 361 (1959)
A.M. MINTON, Petitioner,
v.
STATE of Florida, Respondent.
Supreme Court of Florida.
June 17, 1959.
Rehearing Denied July 15, 1959.
*362 Jordan Johnson and Hal S. Ives, West Palm Beach, for petitioner.
Richard W. Ervin, Atty. Gen., and Irving B. Levenson, Asst. Atty. Gen., for respondent.
ROBERTS, Justice.
This cause is before the court on certiorari granted to review a decision of the District Court of Appeal, Second District, Minton v. State, Fla.App. 1958, 107 So.2d 143, affirming a verdict and judgment convicting petitioner ("defendant" hereafter) of a gambling offense. Certiorari was granted because of an apparent conflict between the decision brought here for review and the decisions of this court in Trafficante v. State, Fla. 1957, 92 So.2d 811, and State ex rel. Brown v. Dewell, 1936, 123 Fla. 785, 167 So. 687, involving the right of a defendant in a criminal case to inspect the grand jury testimony of a state's witness for the purpose of laying the foundation on cross-examination for impeaching the trial testimony of such witness.
In the Trafficante case, supra, 92 So.2d 811, this court held that it was error for the trial judge to deny a sworn application for a subpoena duces tecum directed to the official court reporter, directing her to bring the transcript of the testimony of the State's witness Dietrich given before the grand jury and to make same available to defense counsel in order that it might be utilized in cross-examination of the witness for the purpose of laying the foundation for impeachment of the witness' direct testimony, without first examining same to determine its "materiality." This application was made during the trial when the witness Dietrich was tendered to defense counsel for cross-examination; and it was stated therein, upon oath, that Dietrich's testimony before the grand jury was material and relevant to, and in conflict with, the testimony of this witness given on direct examination at the trial.
In the instant case counsel for the defendant, prior to trial, filed a written motion for an order requiring the State to make available to the defendant and his attorney all portions of the Grand Jury report applicable to his case, ostensibly for the purpose of obtaining a list of the witnesses to be used by the State at the trial. This motion was sworn to by counsel for defendant "upon information, knowledge and belief." Again, at the trial counsel for defendant made an oral motion during the cross-examination of the State's witness Thomas for leave to inspect the grand jury testimony of this witness "so that I can determine whether he is testifying to the same thing at this time as he did then * * *." Both motions were denied by the trial judge.
The trial judge did not read the grand jury testimony of the witness Thomas prior *363 to denying the motion made by defendant's counsel during cross-examination of this witness for leave to inspect his grand jury testimony; and we were initially concerned with the question of whether his failure to do so was in direct conflict with the decision of this court in the Trafficante case, supra, 92 So.2d 811. For reasons hereafter stated we have concluded, upon further consideration, that the decision of the appellate court affirming the trial judge's action in this respect is in harmony with the decision of this court in the Trafficante case.
We wish to make clear, however, that the trial judge was eminently correct in denying the defendant's pre-trial motion to inspect the grand jury testimony of all the State's witnesses for the purpose of preparing his defense  assuming, arguendo, that his pre-trial motion was so considered by the trial judge, as here contended by the defendant. Our statute, § 905.27, Fla. Stat. 1957, F.S.A., authorizes the disclosure of grand jury testimony of a witness "for the purpose of ascertaining whether it is consistent with that of the witness given before the court, or to disclose the testimony given before the grand jury by any person upon a charge against such person for perjury in giving his testimony or upon trial therefor, or when permitted by the court in the furtherance of justice." It has been so provided, in substance, by statute in this state since 1868. Ch. 1628, Acts of 1868. This court holds, under the terms of our statute and in accord with the great weight of authority in other jurisdictions, that in a prosecution for perjury (or subornation of perjury) allegedly committed before a grand jury, an accused has the right to inspect, in advance of trial, the transcript of testimony given before the grand jury upon which the perjury charged was based, in order to prepare his defense. See Gordon v. State, Fla. 1958, 104 So.2d 524, 537; United States v. Rose, 3 Cir., 1954, 215 F.2d 617. But with this one exception we have found no case  and none has been cited  in which an accused has been permitted to inspect, in advance of trial, the grand jury testimony of the State's witnesses for the purpose of preparing his defense. The case most frequently cited in support of an order denying pre-trial motion for general release of the grand jury testimony in a criminal case is United States v. Garsson, D.C.N.Y. 1923, 291 F. 646, 649, in which Judge Learned Hand said:
"I am no more disposed to grant it than I was in 1909. United States v. Violon, C.C. 173 F. 501. It is said to lie in discretion, and perhaps it does, but no judge of this court has granted it, and I hope none ever will. Under our criminal procedure the accused has every advantage. While our prosecution is held rigidly to the charge, he need not disclose the barest outline of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least fair doubt in the minds of any one of the twelve. Why in addition he should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see. * * *"
See also the many cases cited in United States v. General Motors Corp., D.C.Del. 1954, 15 F.R.D. 486, 487; Havenor v. State, 1905, 125 Wis. 444, 104 N.W. 116; United States v. Papaioanu, D.C.Del. 1950, 10 F.R.D. 517; Commonwealth v. Ries, Mass. 1958, 150 N.E.2d 527. For cases involving the release of grand jury testimony in non-criminal proceedings see In re Jessup's Petition, 1957, 11 Terry 530, 50 Del. 530, 136 A.2d 207 (general release of grand jury testimony sought by legislative investigating committee); Doe v. Rosenberry, D.C.N.Y. 1957, 152 F. Supp. 403 (disclosure of grand jury matters sought in disciplinary proceedings against an attorney); United States v. General Motors, D.C.Del. 1954, 15 F.R.D. 486, 488 (general release sought by defendant in civil suit for damages under the Elkins Act, 49 U.S.C.A. § 41(3)); In re Matter of Special 1952 Grand Jury, D.C.Pa. 1958, *364 22 F.R.D. 102 (release of plaintiff's grand jury testimony sought by defendant in civil action for damages for alleged violation of the anti-trust laws).
We repeat, then, for clarity, that  except as to grand jury testimony upon which a charge of perjury or subornation of perjury is based  an accused in a criminal case has no right to inspect, in advance of trial, the grand jury testimony of the witnesses who will be called by the State to testify against him at the trial for the purpose of preparing his defense. And we now revert to the question that prompted our preliminary issuance of the writ, that is, whether the appellate court's decision finding that no reversible error was committed by the trial judge in refusing to grant defendant's oral motion, made during the cross-examination of the witness Thomas, for permission to inspect the grand jury testimony of the witness for the purpose of laying the foundation for impeachment, is in direct conflict with the decision of this court in the Trafficante case, supra, 92 So.2d 811.
The rationale of the appellate court's affirmance of the trial judge's order denying inspection was, apparently, that no proper predicate was made by the defendant sufficient to require even a preliminary examination of the grand jury testimony of the witness Thomas by the trial judge "with a view to making final determination of its materiality," Trafficante v. State, supra, 92 So.2d 811, 815, a procedure which we indicated should have been followed in that case
In the Trafficante case the State took the position that the grand jury before which the State's witness, Sergeant Dietrich, testified was not investigating the Trafficantes but was inquiring into the official conduct of law enforcement officers in the county; that the grand jury did not indict the Trafficantes; and that Dietrich's grand jury testimony was, therefore, not pertinent or relevant to the trial of the Trafficantes under an information charging them with offering and giving a bribe to Sergeant Dietrich. As noted in this court's decision in the cause, the defendants alleged under oath in their motion for the subpoena duces tecum that defendants and their counsel "had reason to believe and verily did believe" that Dietrich's testimony before the grand jury "was in material aspects directly opposite to and in conflict with the testimony given by the said Sergeant Dietrich in his testimony in chief in this cause". They also proffered the testimony of the official court reporter that Sergeant Dietrich testified before the grand jury concerning some or all of the matters and transactions about which he testified in chief at the trial. It was against this background that this court said:
"Appellants' sworn application for the subpoena, as we have stated, sets up the materiality of the evidence sought to be reached by the subpoena and must be taken for the purpose of this appeal as proving materiality to the extent necessary to warrant examination of the transcript by the court with a view to making final determination of its materiality." Trafficante v. State, supra, 92 So.2d 811, 815.
In the instant case, counsel for the defendant established, by cross-examination of the State's witness Thomas, that Thomas had testified before the grand jury and had been granted immunity (under § 932.29, Fla. Stat. 1957, F.S.A.) concerning the transactions about which he testified. He then orally moved for permission to inspect Thomas' grand jury testimony prior to concluding his cross-examination "so that I can determine whether he is testifying to the same thing at this time as he did then." The motion was denied by the trial judge. In an order denying the defendant's post-verdict motion for a new trial, the trial judge stated, in a well-considered opinion, his reasons for denying the defendant's motions to inspect the grand jury testimony, and concluded:

*365 "In the instant case a list of witnesses for the State was furnished counsel for the defendant, the examination of the State's witnesses who had appeared before the grand jury was of a cursory nature and there does not appear to be any suggestion directly, or indirectly, that the witnesses for the State at the time of trial varied their testimony in any material respect from their testimony before the grand jury." (Emphasis added.)
It is here contended on behalf of the defendant that "it was the duty of the trial judge, when the materiality of the testimony of the State Witness George Thomas had been made known to him, under Section 905.27, Florida Statutes, F.S.A., to have read the Grand Jury testimony of George Thomas, to ascertain whether or not the ends of justice required him to order this testimony delivered to defense counsel for their inspection, before further cross-examination of this State Witness." It may be that the "materiality" of the grand jury testimony of the State's witness Thomas had been made to appear, insofar as the question of whether his grand jury testimony related to the same matters and transactions about which he testified in chief at the trial is concerned; but, for reasons stated hereafter, we do not interpret the Trafficante decision as requiring the trial judge to grant a motion to inspect the testimony of a State's witness for impeachment purposes upon this one showing, alone, of "materiality".
The reasons for the traditional rule of secrecy of grand jury proceedings are well stated in In re Jessup's Petition, supra, 136 A.2d 207, which contains as well an excellent discussion of the origin and development of grand juries. See also Jenkins v. State, 1895, 35 Fla. 737, 18 So. 182. In brief, the reasons for the policy of secrecy are generally said to be: to protect the jurors themselves; to promote a complete freedom of disclosure; to prevent the escape of a person indicted before he may be arrested; to prevent the subornation of perjury in an effort to disprove facts there testified to; and to protect the reputations of persons against whom no indictment may be found. Under our statute, § 905.27, supra, and the previous decisions of this court, it is settled that, when the purposes of the secrecy rule are accomplished and a disclosure becomes essential to the attainment of justice and the vindication of the truth, the rule of secrecy may be relaxed in the discretion of the court. See Jenkins v. State, supra, 18 So. 182; State ex rel. Brown v. Dewell, 1936, 123 Fla. 785, 167 So. 687; and Trafficante v. State, supra, 92 So.2d 811. But it is crystal clear that something more than a mere surmise or speculation that a witness's testimony at the trial is inconsistent with that given before the grand jury must be made to appear in order to hold a trial judge in error for refusing to lift the veil of secrecy from the grand jury proceedings. While, in a given case, the reasons for secrecy may no longer obtain, the effect on subsequent grand jury proceedings  on jurors, on witnesses, on the privacy of the system itself  of indiscriminate disclosure has been said to be "of greater moment." United States v. General Motors, D.C.Del. 1954, 15 F.R.D. 486, 488.
Here, the motion of counsel for defendant for leave to inspect the grand jury testimony of the witness Thomas was for the sole purpose of determining "whether he is testifying to the same thing at this time as he did then." It was, therefore, based on pure surmise or speculation, if not on curiosity. As noted above, in Trafficante there was a motion, sworn to upon information and belief, alleging that Dietrich's grand jury testimony "was in material aspects directly opposite to and in conflict with" his trial testimony. This positive allegation of conflict is entirely different from the motion, based at most on surmise and speculation, made by counsel *366 for defendant in the instant case. Cf. United States v. Geller, D.C.N.Y. 1957, 154 F. Supp. 727. Moreover, in his order denying defendant's motion for new trial, the trial judge pointed out that there was no "suggestion, directly, or indirectly, that the witnesses for the State at the time of trial varied their testimony in any material respect from their testimony before the grand jury." (Emphasis added.) Cf. People v. Nicoll, 1956, 3 A.D.2d 64, 158 N.Y.S.2d 279.
Accordingly, in these circumstances and upon further consideration, we find that there was no conflict between the decision brought here for review and the decision of this court in Trafficante.
We wish to make clear, however, that this decision and the Trafficante decision should not be interpreted as requiring a trial judge to make the preliminary inspection referred to in Trafficante in every case where the motion to inspect the grand jury testimony of the witness is based solely upon an allegation  whether sworn to or not  that the witness's grand jury testimony is in conflict with his trial testimony. Reference to the record reveals that the sufficiency of the allegations of the motion for the subpoena duces tecum as to this particular aspect of "materiality"  inconsistency between the grand jury and the trial testimony of the witness  was not attacked in the trial court nor in this court in the Trafficante case.
The Trafficante decision, following State ex rel. Brown v. Dewell, supra, 167 So. 687, held that an accused is entitled to inspect the grand jury testimony of a State's witness, when a proper showing is made, in order to lay the foundation for impeachment of such witness' direct testimony given at the trial; and, by analogy to Vann v. State, Fla. 1956, 85 So.2d 133, that the proper procedure in such case is for the trial judge to examine the grand jury testimony sought to be disclosed "with a view to making final determination of its materiality." [92 So.2d 815] It might be noted that the preliminary-examination procedure adopted in Trafficante is followed in many federal courts. As stated in United States v. H.J.K. Theatre Corp., 2 Cir., 1956, 236 F.2d 502, 507:
"The proper procedure is for the trial judge to read the Grand Jury minutes to determine whether the witness' trial testimony is contradictory; if it is, the judge should disclose to defendant that part of the witness' Grand Jury testimony which contradicts the witness' trial testimony; and if not, and if the defendant so requests, the judge should seal the witness' complete Grand Jury testimony and make it part of the record on appeal."
See also United States v. Spangelet, 2 Cir., 1958, 258 F.2d 338; United States v. Consolidated Laundries Corp., D.C.N.Y. 1958, 159 F. Supp. 860; Pittsburgh Plate Glass Co. v. United States, 4 Cir., 1958, 260 F.2d 397.
But, as noted above, in the Trafficante case this court was not called upon and did not attempt to delineate the showing of inconsistency required to be made by the defendant in order to impose upon the trial judge the duty of making a preliminary inspection of the grand jury testimony of the witness sought to be impeached to determine whether it was, in fact, contradictory to that given at the trial. It is clear that, because of the inaccessibility of the grand jury testimony to defense counsel, a positive showing of inconsistency should not be required. On the other hand, a trial judge should not be compelled in every case to halt the trial and examine such testimony on the bare allegation of defense counsel that there is conflict. The best statement we have found of the trial judge's duty in this situation is that of Chief Judge Sobeloff in *367 Pittsburgh Plate Glass Co. v. United States, supra, 260 F.2d 397, 404, which we quote at some length, as follows:
"For good reasons, rooted in long experience, courts have shielded grand jury proceedings from unnecessary exposure. This tradition of the law is not to be abandoned without clear legislative direction * * * This is not to suggest, however, that in a case of `particularized need' the secrecy of grand jury testimony may not be `lifted discretely and limitedly.' United States v. Procter & Gamble Company, decided June 2, 1958, 356 U.S. 677, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077. When the circumstances seem to the Judge appropriate, he may make such inspection without necessarily requiring a prior showing of inconsistency. United States v. Spangelet, supra [258 F.2d 338]. If the Judge finds inconsistency, and deems it in the interest of justice to bring it to the attention of the cross-examiner, he may do so. If merely inconsequential deviations are found, he is not required to provide the cross-examiner a basis for ranging over a wide area of collateral and minute detail.
"Even inspection by the trial judge, it must be recognized, has serious drawbacks. It would cast a heavy burden on the trial judge and seriously interrupt the trial for the Judge to attempt to ferret out inconsistencies in a lengthy transcript; he may not be able readily to absorb and evaluate every nuance in an extensive transcript. A further objection is that imposing this task on the Judge as regular procedure would draw him too deeply into the partisan task of preparing the cross-examination. From time to time instances may arise in which it will appear to the Judge wise and just to read the transcript to check a particular point sharply in issue, but the minute examination, during the trial of elaborate grand jury minutes should not be expected of him.
"After all, what are we dealing with is a problem of the fair scope of cross-examination, and the sound judicial discretion of the trial judge must be the chief guide. When the subject matter is one as delicate as grand jury testimony, no fixed rule can be formulated. The Judge should not be compelled to inspect in all cases; neither should he indiscriminately refuse, but he should exercise his judgment according to the circumstances. Certainly we could not approve any rule, such as contended for by the defendants here, requiring the automatic delivery of grand jury transcripts to defendants on demand."
Recognizing that Judge Sobeloff's pronouncement is couched in broad and general terms and leaves much to the discretion of the trial judge, we nevertheless adopt it as the sentiment of this court, being confident that the trial judge's judicial discretion in this respect will be fairly and justly exercised in weighing the public interest in preserving the secrecy of grand jury proceedings against the right of an accused to disclosure when it is essential to the attainment of justice and the vindication of the truth.
The other points of alleged conflict between the decision brought here for review and previous decisions of this court have been considered and no conflict has been found.
For the reasons stated, the writ heretofore issued should be and it is hereby discharged.
It is so ordered.
TERRELL, C.J., and DREW, THORNAL and O'CONNELL, JJ., concur.